# Goodloe's Trustee and Adm'r et al. v. Goodloe et al.

June 9, 1942.

William B. Gess and John L. Davis for appellant.

Hunt, Bush & Lisle and Edward C. O'Rear for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER
—Reversing.

The action calls for the construction of the will of Mary E. Goodloe who died a resident of Fayette county in February, 1920. The will was duly probated and reads:

"I, Mary E. Goodloe of Fayette County, Kentucky, do hereby make, publish and declare this instrument of writing to be my last will and testament, hereby revoking all others by me heretofore made.

"First: I direct my Executors hereinafter named to pay my just debts and funeral expenses promptly after this will become operative.

"Second: I give, devise and bequeath all my property and estate of every kind and description, and wherever situated, to the Security Trust Company of Lexington, Kentucky, as Trustee, and in trust, upon the following terms and conditions, to-wit:

"(a) Out of my estate said Trustee shall set aside and hold such portion as will produce a net income of Fifteen Hundred Dollars ($1500) annually, which income shall be paid quarterly to my daughter Wilhelmina Goodloe, as long as she shall live unmarried."

"(b) There shall also be set aside by said Trustee out of my estate such a portion as will produce a net annual income of One Hundred Dollars ($100.) which income shall be paid quarterly to Brutus Saunders my faithful servant, so long as he shall live.

"(c) After setting aside the property to produce these incomes, I direct said Trustee to divide and deliver and pay over all the rest of my estate (except my home place known as 'Louden') in equal portions among my seven other children, or the descendants of any child that may be dead, such descendants to take per stirpes. But if 'Louden' shall increase in value by reason of the growth and prosperity of the City of Lexington, and thereby my estate should produce for each of my seven other children an amount equal to what is set aside to produce the income for Wilhelmina, then after the other

seven children are equalized with her allotted estate, she shall participate with the other seven children in any excess of my estate over and above what is required to equalize my seven other children with her trust estate, and the Trustee shall then pay, set over and deliver to Wilhelmina also the portion of my estate held in trust for her under the terms of Clause A hereof.

"The property and estate delivered to my children by said Trustee shall be held by them and during their natural lives, with full power on the part of each life-tenant to manage, control, use and dispose of said property, or any of it, during life, at pleasure. At the death of any of my children, whatever portion of the estate herein bequeathed is left undisposed of in such child's possession shall be held in trust for the issue of such child until the issue respectively shall attain the age of twenty-one years, when the share of such one shall be delivered to him or her to be held in fee simple, the share of any of such issue dying before attaining the age of twenty-one years shall pass to the surviving brothers and sisters, if any, in like trust for those under twenty-one. If any of my children should not leave issue surviving him or her, or leaving issue, all such issue should die before reaching the age of twenty-one years, then the portion of my estate bequeathed to such child or children and remaining undisposed of at the death of same, shall go to my descendants to be held on the same terms as the direct bequests to them under this will are to be held; provided, however, that if any of my children die leaving no issue and leaving a husband or wife surviving, such child shall have the right to bequeath to surviving husband or wife until the death or remarriage of such survivor, the net income from the remaining portion of the estate herein bequeathed to such child; and provided also that any child of mine die without issue surviving shall have the right to appoint by writing in the nature of a last will and testament which of my descendants shall take the share of such child remaining undisposed of, and in what proportions.

(d) As to 'Louden,' if I should own it at the time of my death, I direct said Trustee to hold, man-

age, sell or convey it in such manner and at such time as in its sound discretion will be for the best interest of my estate. I make this provision to prevent a forced sale of this property by any sort of proceeding, and that it be managed to the best interest of my children. When sold, the proceeds shall be divided among my children according to the provisions of clause (c) preceding, but to be settled and divided as soon as it can be done advantageously to all concerned.

"(e) Should my daughter Wilhelmina marry, my said Trustee shall at once pay to her out of the estate reserved for her income an amount equal to what my other children receive in the distribution of my estate and the balance shall be divided among my eight children in equal portions, all to be held in accordance with the provisions of clause (c) of this will. Should my said daughter die unmarried, she shall have the right to dispose of by will to any member or members of my family in such proportions as she chooses an amount of the trust estate equal to what my other children receive as their respective portions of my estate, and the balance of the estate held in trust for her shall be equally divided among my then living children or their descendants in accordance with the provisions of clause (c) preceding.

"(f) Out of the corpus of the trust fund set aside for Brutus Saunders, his funeral expenses shall be paid, and the balance divided as directed in clauses (c) and (e).

"Third: My personal belongings and household effects, furniture, glass, jewelry, silverware, bric-a-brac, etc., etc., shall be divided equally by my children among themselves and my Executor shall not be charged with any duty or liability with respect thereto—but no public sale.

"Fourth: In Carrying out the trust hereby created, I authorize and empower the Trustee to sell, convey, invest or re-invest, re-sell and convey any of the trust estate herein devised. I authorize my daughter Willhelmina to change the Trustee for her portion of the estate at any time she should desire to do so, and in case of change the substituted

Trustee shall have the same powers as the one herein named.

"I authorize and empower the Trustee for my daughter Willhelmina, in case she required it, to allow her to use and withdraw such portion of the principal as she may desire, and as the Trustee may think necessary, proper and judicious for her to have; the income, in case of such withdrawal to be proportionately reduced after that time—I make this provision because I can trust my daughter to be judicious in her expenditures and the time may come when she may need more than her income.

"Fifth: I appoint the Security Trust Company, of Lexington, Kentucky, Executor of this will, which is written in my own handwriting.

"Mary E. Goodloe."

The chancellor was of the opinion that item c under the second clause of the will contravenes the rule against perpetuities recited in Section 2360, Carroll's Kentucky Statutes, 1936 edition. That section reads:

"The absolute power of alienation shall not be suspended, by any limitation or condition whatever, for a longer period than during the continuance of a life or lives in being at the creation of the estate, and twenty-one years and ten months thereafter."

William C. Goodloe, one of the children and devisees of Mary E. Goodloe, died in the year 1938. His widow, Caroline S. Goodloe, whom he married many years after the death of his mother, was his sole survivor. He devised and bequeathed to the widow everything he owned at his death. It is conceded by all parties that William C. Goodloe's will was a sufficient exercise of the power of appointment granted him by his mother's will, and, since he died possessed of certain property which passed to him from his mother's estate, his widow will be entitled during her life, to the net income only from such property in the event that it be determined that Mrs. Goodloe's will does not contravene the provisions of Section 2360 of the Statutes, supra. On the other hand, if it should be determined that item c of clause two violates the rule against perpetuities, the fee simple title to the property, which Mrs. Goodloe attempted to devise in trust, actually passed to her children under the laws of descent and distribution, and Caroline Goodloe,

through the will of her husband, became the owner in fee of that portion of Mary E. Goodloe's estate which William C. Goodloe inherited. In support of the last contention appellees argue that the remainder created by Mary E. Goodloe's will following the devises to the issue of her children, and the remainder created by her will which takes effect upon the termination of the life estate created under the power of appointment to her children, contravene Section 2360 of the Statutes, in that they suspend the absolute power of alienation for a longer period of time than twenty-one years and ten months after a life in being at the creation of the estate. A determination of the question depends upon the time a valid deed to the property devised may be executed by the ultimate remaindermen, or by the ultimate remaindermen jointly with the life tenant holding under the power of appointment created by the will; and, whether that time can in any case be twenty-one years and ten months beyond a life in being at the time of the death of Mrs. Mary E. Goodloe.

It must be conceded it is not beyond the realm of possibility that one of the children of Mrs. Mary E. Goodloe might marry a person, who at the death of Mrs. Goodloe, had not been born. Likewise, it must be conceded that such spouse might live more than twenty-one years and ten months beyond the lives of the children of Mrs. Goodloe. It then becomes necessary for us to determine whether the absolute power of alienation of the property devised has been suspended by the will until the death of such possible spouse, or, whether it has only been suspended until twenty-one years and ten months after the death of Mrs. Goodloe's children. It is manifest that the provisions of the statute are not violated by the provision of the will which directs that a deceased child's share shall pass to his issue to ripen into a fee simple title upon attaining the age of twenty-one years. Such child may thereupon alienate the property and such time cannot possibly be more than twenty-one years and ten months beyond the life of the deceased parent, who was living at the time of the creation of the trust. Appellee's argument to the contrary in respect to this contingency is based upon the decision in the case of Laughlin v. Elliott, 202 Ky. 433, 259 S. W. 1031, but the opinion in that case was overruled in Tuttle v. Steele, 281 Ky. 218, 135 S. W. (2d) 436. Our minds are not left in doubt concerning the correctness of the decision in the

case last cited. Neither would the provisions of the statute be contravened in the event that one of Mrs. Goodloe's children should die without issue and without having exercised the power of appointment by devising a life estate to his or her surviving spouse. In that event Mrs. Goodloe's remaining descendants immediately, or as soon thereafter as they arrived at the age of twenty-one, would be vested with the fee simple title to such property.

It is true that some of Mrs. Goodloe's descendants might be and probably will be born twenty-one years and ten months after her demise, but her life is not the only one to be considered in being at the time of the creation of the trust. No descendant born more than ten months after the death of one of testatrix's children would be entitled to participate in the enjoyment of the remainder interest of the estate which passed through the tenure of such deceased child, because the identity of the descendants entitled to take under the will is to be determined as of the time of such death. Ford v. Jones, 223 Ky. 327, 3 S. W. (2d) 781. Fee simple estates, life estates, and remainders alike vest at the time of their creation although the time of their enjoyment may be suspended. Such estates may be conveyed by deed and a complete title to the property may be had by conveyance of remaindermen, if the owner of the intervening title joins in the conveyance. Thus suspension of the absolute power of alienation ceases upon the vesting of the estate. Since the ultimate remainder as well as the ultimate life estate vests upon its creation, both vest upon the death of the children of Mrs. Goodloe. Should the deceased child have exercised the power of appointment, then the life estate to the surviving spouse will vest at his death but at the same time the remainder will vest in the descendants of Mrs. Goodloe then living or born within the period of gestation thereafter. Since the ultimate remainderman must be living at the time of the death of the children of Mrs. Goodloe, or be born within ten months thereafter, and, since under the will he has power to alienate the property when he arrives at the age of twenty-one years the absolute power of alienation has not been suspended more than twenty-one years and ten months after the death of a life which was in being at the creation of the estate. Russell v. Meyers, 202 Ky. 593, 260 S. W. 377.

But counsel for appellees, to illustrate their contention, cite the following hypothetical situation:

"Suppose that William C. Goodloe's sister, A, gave birth to children B and C, after Mary E. Goodloe's death; that A then predeceased William leaving B and C living. Upon William's death B and C would join with William's surviving brothers and sisters in taking a life estate in his share. Could B and C also join with the surviving brothers and sisters and their issue in conveying a good title to the whole? Obviously they could not. B and C might live more than twenty-one years ten months after A's death, and then die leaving children. Such children would be members of the class entitled to participate in the disposition of the remainders. Any present conveyance is bound to be invalid to the extent of B and C's children."

Could we find no fault with the logic contained in the above statement appellees' contention would have to be upheld. The fallacy of the hypothesis is contained in the second sentence where it is said: "Upon William's death B and C would join with William's surviving brothers and sisters in taking a life estate in his share." They would undoubtedly join with William's surviving brothers and sisters, but they would not be limited to a life estate as are the brothers and sisters. Their estate would be a fee simple or would ripen into a fee simple upon their arriving at the age of twenty-one years. The provision "I direct said trustee to divide and deliver and pay over all the rest of my estate * * * in equal portions among my seven other children, or the descendants of my children that may be entitled, * * *" does not limit the quality of the estate to be taken by the descendants of the deceased children to the quality of the estate the parent would have taken had he or she survived. In succeeding to the ancestor's devise, the descendants of a deceased child take a fee simple title to that portion of the estate by reason of the following declaration:

"At the death of any of my children, whatever portion of the estate herein bequeathed is left undisposed of in such child's possession shall be held in trust for the issue of such child until the issue respectively shall attain the age of twenty-one, when the share of such one shall be delivered to him or her to be held in fee simple, * * *."

If the language of the will should be considered to be ambiguous in this respect, the court would incline to a construction which renders the will valid and one favorable to the early vesting of the fee simple estate. Where one of two permissible constructions of an ambiguous will renders it violative of the rule against perpetuities, and the other does not, the former will be rejected and the latter adopted. Haydon v. Layton, Ky., 128 S. W. 90; Beall v. Wilson, 146 Ky. 646, 143 S. W. 55; Emler v. Emler's Trustee, 269 Ky. 27, 106 S. W. (2d) 79.

In Klingman v. Gilbert, 90 Kan. 545, 135 P. 682, 683, the clause under consideration in the will involved recites:

"I give and bequeath to my daughter Mrs. Altha Moody, and sons, John D. and Henry L. Gilbert, for the period of their natural lives, all real estate of which I am now or may at my death be legally seised, each of said sons and daughters to share equally. Upon the death of said sons or daughters, or either of them, their respective shares shall descend as follows: The shares of the sons shall descend to their widows to be used and enjoyed by them during the period of their natural lives or until they shall again marry and upon the death of said widows the interest of each shall descend to the heirs of the body of said sons in fee simple. If said daughter shall be survived by issue, her estate shall descend to such issue, but failing such issue, her estate shall descend to said sons and upon their death to the surviving widows, if any, of said sons for life or until they shall again marry and upon their death to the heirs of the body of said sons in fee simple."

In that case, as in many in this jurisdiction, it was declared that the rule against perpetuities is satisfied if the power of alienation vests within the prescribed period of time even though the possession and enjoyment of the property might be postponed beyond such period. Johnson's Trustee v. Johnson, 79 S. W. 293, 25 Ky. Law Rep. 2119, and cases therein cited. In Klingman v. Gilbert, supra, it was held that the will did not violate the rule. When we read the executed power of appointment into the will of Mrs. Goodloe, as we must under the following authorities, Gray's Rules of Perpetuities, Section 515; 49 C. J. 1305, Section 150; Ligget v. Fidelity & Columbia Trust Co., 274 Ky. 387, 118 S.

W. (2d) 720, we find the will in this case to be identical with that in Klingman v. Gilbert, supra. We are therefore of the opinion that Mrs. Goodloe's will does not violate the rule against perpetuities.

The judgment is reversed with directions to enter another adjudging Caroline S. Goodloe to be entitled to a life estate in the estate in question and such other orders as may be consistent herewith.

Whole Court sitting except Judge Rees.