Alonzo J. Pbey, S.
This is a proceeding for the final judicial settlement of the accounts of the Exchange National Bank of Olean, New York, as trustee under the last will and testament of the above-named deceased, and for a judicial construction of certain portions of the will of said deceased.
Allan I. Williams departed this life a resident of Cattaraugus County, State of New York, on the 21st day of October, 1929. He left a last will and testament and two codicils which were duly admitted to probate by this court on the 8th day of November, 1929. Letters testamentary and of testamentary trusteeship were issued on the same date to the Exchange National Bank of Olean, New York. The accounts of the Exchange National Bank of Olean, New York, as executor under the will of said deceased were duly judicially settled by a decree of this court dated April 3, 1931. Pursuant to such decree of judicial settlement, the Exchange National Bank as trustee of the trust created under the will of said deceased for Daisy James received the sum of $15,641.63, for which they are now accounting as such trustee.
*776 The will, dated May 11, 1923, after making certain bequests to the grandchildren of said deceased, created a trust for the benefit of Daisy James, and gave her the free use and occupancy of his home at Olean, New York, plus two sevenths of his residuary estate, and further provided that in case of a reversion of the property devised in said trust directed that the same be divided between, “ my three sons or their heirs as follows: — to Allan B. Williams one-fifth, Myron P. Williams two-fifths, and Friend P. Williams two-fifths ’ ’.
The codicils did not change the nature or distribution of the final residuary of the trust as expressed in the will itself.
After the death of the deceased, Allan I. Williams, and before his will was admitted to probate, his sons, Myron P. Williams and Friend P. Williams, conveyed to the third son, Allan B. Williams, such an undivided interest in the property of said deceased to which they would be entitled so that each of the three sons would receive an equal one-third part of the estate, including the remainder of the trust created for the benefit of Daisy James.
Allan B. Williams has executed and filed with the accounting trustee, three separate assignments of portions of his interest in the life tenancy of Daisy James, each of which is dated July 23, 1941; the first in favor of Emily Williams to secure $250 represented by a demand note, the second to secure $250 represented by a demand note in favor of Grace Williams, and the third one in favor of Myron P. Williams for $1,000.
All three sons survived the deceased, and upon the judicial settlement of the executor, received their respective shares in the estate. Friend P. Williams, however, predeceased the life tenant and departed this life on the 20th day of February, 1939, survived by two daughters as his only distributees, namely, Grace W. Liebich and Emily Williams Dowling. Friend P. Williams left a last will and testament by which one half of his entire estate passed outright to the daughter, Grace, on reaching the age of 30 years, and the other one half to his other daughter, Emily Williams Dowling, on her reaching the age of 30 years. The both daughters became 30 years of age, and became entitled absolutely to their respective shares as sole legatees under his will.
Daisy James, the life tenant, departed this life in December, 1957.
In April, 1957 and prior to the death of Daisy James, Emily Williams Dowling, a daughter of Friend P. Williams, departed this life intestate, a resident of the State of Maryland, leaving *777 her surviving as sole distributees in the State of Maryland her husband, Lynn T. Dowling, and her sister, Grace W. Liebich. Subsequent to the death of Emily Williams Dowling, her husband, Lynn T. Dowling, has been adjudged a bankrupt in the United States District Court, District of Maryland, and George J. Lochner appearing by Harry B. Hunter, Joseph C. Bordonaro of counsel, is by decree appointed trustee in bankruptcy of the bankrupt estate of Lynn T. Dowling.
It is the claim of Grace W. Liebich, as the sole surviving heir of Friend P. Williams, that she is entitled to a full two-fifths share of the remainder of her estate and that her assignment from the son, Allan B. Williams, is valid and should be honored. This claim is made on the basis that the interest in the residuary estate at the termination of the trust created for Daisy James did not vest until the death of the life tenant of said trust, that is until the death of Daisy James who died on December 13, 1957, and that Grace W. Liebich, being the sole surviving heir at law of said Friend P. Williams, takes to the exclusion of the husband of her deceased sister, Emily Williams Dowling.
It is the claim of the trustee in bankruptcy of Lynn T. Dowling that title in the trust created for Daisy James vested in the three sons subject only to the life use of the life tenant, Daisy James, and that the trustee in bankruptcy is entitled to receive all of the inheritance to which Lynn T. Dowling is entitled as the surviving husband of the deceased daughter of Friend P. Williams, Emily Williams Dowling.
Thus, it becomes necessary to construe that portion of the will which created the trust for Daisy James. Was it the intent of the testator that the title to the estate vested immediately on his death subject only to the rights of the life tenant, or did he intend that the property should not vest until it should be determined who of the distributees of said deceased survived the life tenant?
Carefully prepared memorandums have been submitted by counsel for the only remainderman, Grace W. Liebich, and for the trustee in bankruptcy, and many cases have been cited by each group of attorneys to justify the conclusions which they reach in their respective briefs.
No formal proof has been presented by any of the persons appearing in this proceeding, but the attorneys for the respective parties have by stipulation agreed upon certain facts and the stipulations and papers attached thereto are recognized as a part of the formal record in this proceeding. The facts upon which the agreement of counsel agreed are: (1) That the will
*778 of the deceased and the codicils' were in the testator’s own handwriting; (2) That he did not have a formal education; (3) That he was not an attorney at law; (4) That he had been a cashier and director of the Exchange Bank at Olean, New York; (5) That Allan B. Williams and Myron Williams, along with their wives, and Friend P. Williams, now deceased, entered into an agreement with the life tenant, the result of which was that the building occupied by the life tenant under the trust created by the will of the deceased was converted into two apartments, one of which was occupied by the life tenant until her death; (6) That the residuary legatees acting in consort with the life tenant sold the garden lot described in paragraph 3-a, of the will; (7) That the proceeds were divided among the residuary legatees and the trust in the proportionate shares to which they were entitled. It is further stipulated that the life beneficiary of the trust was an employee and not related to the deceased; that Emily Williams Dowling, one of the two children of Friend P. Williams, died intestate leaving no children, but survived by a husband and her sister, Grace Liebich, one of the parties to this proceeding. It is further stipulated that the surviving husband of the daughter, Emily Williams Dowling, is in bankruptcy and that George J. Lochner, represented by Mr. Hunter in this proceeding, is the duly appointed and acting trustee in bankruptcy of the Lynn T. Dowling estate and it is further stipulated that Friend P. Williams, the son of the deceased, left a last will and testament admitted to probate by which one half of his entire estate was bequeathed and devised to each of his two children, Emily and Grace. Attached to the stipulation is the deed above referred to, the mortgage and the agreement above referred to. By supplemental stipulation dated November 20, 1959 the parties appearing in this proceeding have stipulated in the record copies of: (1) the assignment from Allan B. Williams to his niece, Emily I. Williams, dated July 23,1941 in the amount of $250; (2) an assignment executed by Allan B. Williams to Grace Williams, now Grace Williams Liebich, in the amount of $250 ; and (3) an assignment from Allan B. Williams to Myron P. Williams, dated July 23, 1941 in the amount of $1,000 as collateral security for the payment of promissory notes of like amounts to each assignee respectively, all payable out of his share of the remainder of the Daisy James trust. Also stipuated into evidence and a part of the record in this case is an assignment executed October 24, 1929 by Myron P. Williams and Margaret 0. Williams, his wife, and Friend P. Williams to Allan B. *779 Williams of such amount out of the estate and out of the remainder of the trust as will vest in Allan B. Williams, assignee, such amount as will entitle him to a one-third part of the estate and remainder of the trust.
In addition to the principal question for determination, viz.: the question of whether or not title to the property included in the trust was vested at the date of the death of the deceased or contingent until the death of the life beneficiary; it must be determined whether the assignments of interest presently existing made by Allan B. Williams and described above are valid and whether or not the agreement dated October 24, 1929 between the residuary legatees was a valid transfer of the interest of the ones who executed said agreement.
In this memorandum decision, I will consider first the question of whether or not the property given in trust to Daisy James was a vested interest at the death of the testator.
It is well settled that the law in this State favors the early vesting of estates. Unless there is a contrary intention unequivocably expressed, such an intent will not be imputed. (Matter of Watson, 262 N. Y. 284; Matter of Hallock, 283 App. Div. 1091; Matter of Paoira, 14 Misc 2d 515; Matter of Krooss, 302 N. Y. 424.) Judge Fulo, writing the opinion in the Matter of Krooss (supra, p. 428) says, “ When a will contains language that has acquired, through judicial decision, a definite and established significance, the testator is taken to have employed that language in that sense and with that meaning in mind.” The testator Krooss gave his widow a life estate and a power to use the principal if necessary for her maintenance and support, with whatever remained after her death, absolutely and forever, in equal shares, to his two children with the added direction being that were either of said children to die prior to the death of his said wife, leaving descendants, then the descendants should take the share the parent would have taken if living, share and share alike. The daughter, Florence, predeceased the life beneficiary and the Surrogate held that the interest given to the daughter was vested at the testator’s death subject to be divested only in the event of her predeceasing her mother leaving descendants.
The Appellate Division (277 App. Div. 394) modified the decree of the Surrogate which imposed upon each of the remaindermen the condition that he or she survive the life beneficiary. The Court of Appeals, however, reversed the Appellate Division in an opinion written by Judge Fuld who, in his opinion, states (p. 429): “ Over the years, the courts have uniformly held that *780 language such as that used by the testator here, or language substantially identical, creates a vested remainder in fee subject to be divested by the remainderman’s failing to survive the life beneficiary, if, but only if, such remainderman leaves issue or descendants surviving.” The Judge followed the precedent in Staples v. Meade (214 N. Y. 625). The Court of Appeals, therefore, reversed the Appellate Division and affirmed the decree of the Surrogate’s Court.
Section 40 of the Real Property Law provides that a future estate is either vested or contingent. It is vested when there is a person in being, who would have immediate right to the possession of the property, upon the termination of all the intermediate or precedent estates. It is contingent while the person to whom or the event upon which it is limited to take effect remains uncertain.
It is not, therefore, the uncertainty of enjoying in the future, but the uncertainty to the right of that enjoyment which marks the difference between a vested and a contingent remainder. An estate is vested where it is a determination of right of present enjoyment or a present right of future enjoyment. But, though it may be uncertain whether a remainder will, however, take effect in possession, it will nevertheless, be a vested remainder, if the interest is fixed. (Matter of Trevor, 120 Misc. 22, mod. 207 App. Div. 673, 209 App. Div. 1; 239 N. Y. 6; Matter of Greenslitt, 165 Misc. 464.)
It is a general rule of law that postponement of the time of payment will not, of itself, make a legacy contingent unless it be annexed to the substance of the gift or, as is sometimes the case, unless it be upon an event of such nature that it is to be presumed that the testator meant to make no gift unless that event happened.
Surrogate Frankenthaler, writing the opinion in the Matter of Gibson (7 Misc 2d 510, 513) says, “ First, there is the presumption in favor of early indefeasibility which ‘ will not be disregarded unless the testamentary language employed makes such a course mandatory ’.” [Citing Matter of Krooss, supra.] ‘ ‘ Secondly, an interpretation of a will that would result in intestacy as to the remainder is to be avoided, if reasonably possible.” The facts in the Gibson case are similar to the one before the court. There the will left the residuary estate in trust to pay the income to the deceased’s daughter for life and on her death to pay the income to the grandson, or if there should be other grandchildren, ‘ ‘ heirs of the body of my daughter,” such grandchildren to take equal parts with the said *781 grandson. The court held that the entire remainder and property vested in the grandson at the death of the testatrix subject to letting in other grandchildren that might be born, but not subject to defeasance by his death during the trust term.
The facts in the case, Matter of Cummings (11 Misc 2d 1060), are similar to the case before the court. There Surrogate Moss, writing the opinion, held that the shares of the remaindermen vested at the time of the testatrix’ death. In his opinion, he states (p. 1061), “As a rule of construction the 6 divide and pay over ’ rule is applied when payment to named beneficiaries is postponed only to let in an intermediate estate or when the gift is of the residuary estate and its application would result in partial intestacy.” He again cites Matter of Watson (262 N. Y. 284, supra) and directed that one third of the residuary pass to the personal representatives of each of two named nephews who predeceased the life beneficiary and who left no children surviving them and one third to the children of the named nephew who did leave children surviving him. In this case all of the residuary legatees predeceased the life beneficiary.
In the case at bar we look only to the language in the will as set forth by the testator himself to determine his intent. The acts of the residuary legatees which occurred subsequent to the testator’s death cannot be considered in determining Ms intent. The Evans case cited by attorneys for the respondent, Liebich, is not controlling in this case. The use of the words, “ My three sons or their heirs ” by the testator does not indicate that he intended that the vested interest should be postponed until the death of the life beneficiary. On the contrary, the language used by the testator means, taken with the other language in the will and codicils, that he intended the remainder of the trust to vest at once with the enjoyment thereof only postponed. As to that part of the estate not included in the trust, no question was raised as to whether or not their interest was a vested interest and the surviving sons took immediately the shares which he directed them to receive. The same language is used there as the testator used in disposing of the remainder of the trust.
I conclude therefore, that, taking the will and codicils, as a whole, the intention of the testator was to, and did, vest the whole of his estate immediately on Ms death in his three sons, with the substitution of their issue for those who should then be dead, or who should predecease the life beneficiary of the trust, but postponing the possession and enjoyment of the corpus of the trust during the trust term. (Matter of Cummings, supra; Matter of Tienken, 131 N. Y. 391.)
*782 As to the assignments made by Allan B. Williams to his niece, Emily L. Williams, to his niece, Grace Williams, and to his brother, Myron P. Williams, I conclude that they were valid assignments; and that the trustee in distributing the remainder shall recognize them as such, interest to be computed from November 20, 1939 to date of payment. The obligor has not appeared in this case to question the validity of his assignments, nor of the notes which said assignments' were to liquidate and since the assignor has not questioned the running of the Statute of Limitation as a defense to the payment thereof, and since resort to collection could not be had until the death of the life beneficiary, the statute has not run against the enforcement of either the notes nor the assignment.
As to the assignment which was made by Myron P. Williams, his wife, Margaret C. Williams, and Friend P. Williams to Allan B. Williams dated October 24, 1929 the result of which was to transfer to each of the remaindermen an equal share in the estate itself as well as to the residuary estate, the trustee should recognize said document as a valid and binding assignment and distribution shall be made to the residuary legatees under the terms of the will as modified by said assignment.
FINDINGS
I find and decide, therefore, as follows:
(1) That the entire estate of the deceased vested in his three sons who survived him and that distribution should be made one third to Allan B. Williams subject to the assignments which he made to Grace W. Liebich, Emily L. Williams and Myron P. Williams and one third to Myron P. Williams and one third to the estate of Friend P. Williams to be distributed pursuant to the terms of his last will and testament.
(2) That the assignments made by Allan B. Williams to Emily Williams Dowling, Grace W. Liebich and Myron P. Williams are valid assignments and enforcible against the share of Allan B. Williams with interest to be computed from November 20,1939 to date of distribution.
(3) That the assignment executed by Myron P. Williams, his wife, Margaret 0. Williams, and Friend P. Williams in favor of Allan B. Williams, assignee, was a valid transfer of the interests of said parties and created an equal one-third interest in each of said sons as residuary legatees of said deceased.
Let decree enter accordingly to be settled on due notice, without costs to any party appearing in this proceeding.