This is an appeal from the Chancery Court of Jefferson Davis County wherein the chancellor entered an order establishing the rights of the parties as to the various mineral leases and deeds on the subject lands. From the chancellor's order the appellants, William Hathorn and R.C. Speights, Jr. bring this appeal asserting that the chancellor erred in defining their interest in the subject property. All of the facts in this litigation were stipulated to by the parties. The chancellor's opinion provides a readable explanation of the facts. We borrow from that opinion here and have made only minor additions which the record before us requires.
 That the facts, as stipulated by the parties, are as follows:
 Title to the W 1/2 of the NE 1/4 of NW 1/4 of Section 19, Township 6 North, Range 17 West, Jefferson Davis County, Mississippi was patented by the United States of America to James M. Clark on December 13, 1884 and passed by mesne conveyances to Mrs. L.M. Clark on December 30, 1935. Mrs. L.M. Clark, on May 1, 1945, conveyed an undivided one-half of all oil, gas and other minerals in, on and under the subject land to W.M. Vaughey. *Page 405 
This undivided one-half mineral interest is not involved in the suit. Thereafter, title to the surface and an undivided 1/2 mineral interest in the subject land passed by mesne conveyances and inheritance to Sallie B. Clark on August 20, 1973.
 On August 29, 1973, Sallie B. Clark conveyed her interest in the subject property to Robert E. Burns and wife, Eva Mae Burns, as an estate by the entirety with full right of survivorship, by deed of record in Book 95 at page 666 in the office of the Chancery Clerk of Jefferson Davis County, Mississippi. In this deed the grantor, Sallie B. Clark, made the following reservation, to-wit:
 "RESERVING unto the grantor herein, however, a LIFE ESTATE in and to all of the above land, including, but the same not being exclusive, the rights to use, possession, rents and profits from said land during the natural lifetime of grantor."
 Eva Mae Burns was killed in an automobile accident on September 8, 1974. Her estate was administered in Cause No. 5910 of the Chancery Court of Jefferson Davis County, Mississippi. Robert E. Burns later married Martha Jane Burns.
 On December 23, 1980, Robert E. Burns and wife, Martha Jane Burns, executed an oil, gas and mineral lease covering the subject lands in favor of the Defendant, Amoco Production Company, which lease appears of record in Book 140 at page 118 in the office of the Chancery Clerk of Jefferson Davis County, Mississippi. The said lease provides for a primary term of five years from January 26, 1981, and entitled Burns to a 3/16ths royalty.
 Thereafter, on June 2, 1981, Robert E. Burns and wife, Martha Jane Burns and Sallie B. Clark, conveyed their entire mineral interest in the subject lands to R.C. Speights, Jr. by mineral deed of record in Book 143 at page 636 in the office of the Chancery Clerk of Jefferson Davis County, Mississippi. This conveyance was for a period of five years from the date thereof and so long thereafter as oil, gas and other minerals are produced from said lands.
 Also on June 2, 1981, R.C., Speights, Jr. executed an oil, gas and mineral lease covering the subject land in favor of the Complainant, William E. Hathorn, which lease appears of record in Book 143 at page 638 in the office of the Chancery Clerk of Jefferson Davis County, Mississippi. This lease provides for a primary term of one year from the date thereof and contains the following clause:
 "It is understood and agreed that this oil, gas and mineral lease covers the life estate interest in the above described lands purchased this date by Lessor from Sallie B. Clark, et al."
 On August 20, 1981, Order No. 406-81 on Docket No. 312-81-420 of the State Oil and Gas Board of Mississippi was entered, wherein the entire Section 19, Township 6 North, Range 17 West, Jefferson Davis County, Mississippi, was established as a drilling unit for the drilling of System Fuels, Inc. of a 17,000 foot well, the System Fuels, Inc. Gas Unit 19-13 No. 1 Well, to test the Harper and Booth sands of the Hosston formation. All interests in said unit were unitized, integrated, and force pooled for the drilling, completion, production, development, and operation of said well.
 On October 12, 1981, R.C. Speights, Jr. executed a one-year primary term oil, gas and mineral lease in favor of William E. Hathorn, covering the subject lands, which lease appears of record in Book 147 at page 567 in the office of the Chancery Clerk of Jefferson Davis County, Mississippi. Speights reserved a 1/4 royalty interest.
 In 1981, System Fuels, Inc. drilled the System Fuels, Inc. Gas Unit 19-13 No. 1 Well in Section 19, Township 6 North, Range 17 West, Jefferson Davis County, Mississippi, which was productive of oil and gas from the Booth Sand of the Hosston formation. Thereafter, in 1982, said well was placed on production and since that time has been producing oil *Page 406 
and gas from the Hosston formation. Said well was not drilled on the lands subject to this suit, but the lands subject to this suit are a part of the unit acreage assigned to said well and, therefore, production from said well is attributable to the lands subject to this unit.
 By Assignment dated May 3, 1982, recorded in Book 157 at page 707 in the office of the Chancery Clerk of Jefferson Davis County, Mississippi, Amoco Production Company assigned a part of its leasehold interest in the lease recorded in Book 140 at page 118 to System Fuels, Inc.
 Sallie B. Clark is presently alive.
 The open mine doctrine is not applicable in this case.
After reciting the facts as stated above the chancellor went on to draw the following legal conclusions:
 II.
 That the estate reserved by Sallie B. Clark in that certain deed dated August 29, 1973 and of record in Book 95 at page 666 in the office of the Chancery Clerk of Jefferson Davis County, Mississippi amounted to a life estate in the subject property, giving her the right (as long as she owned the life estate interest) to interest on royalty under the remainderman's lease and the right, insofar as the interest subject to this suit is concerned, to veto the drilling of a well on the property.
 III.
 That the oil, gas and mineral lease executed by Robert E. Burns and wife, Martha J. Burns, in favor of Amoco Production Company dated December 23, 1980 and recorded in Book 140 at page 118 in the office of the Chancery Clerk of Jefferson Davis County, Mississippi, is a valid lease from the remainderman, and is restricted only to the extent that, insofar as this interest is concerned, the lessee cannot drill a well on the subject land without the consent of the lessee of the life tenant.
 IV.
 That the June 2, 1981 conveyance of a term mineral interest in the subject land from Robert E. Burns and wife, Martha Jane Burns and Sallie B. Clark to R.C. Speights, Jr., recorded in Book 143 at page 636 in the office of the Chancery Clerk of Jefferson Davis County, Mississippi, transferred the life tenancy of Sallie B. Clark and the remainder interest of Robert E. Burns to R.C. Speights, Jr. for the term, but said conveyance did not in any way affect the prior oil, gas and mineral lease from Burns to Amoco Production Company.
 V.
 That the oil, gas and mineral leases dated June 2, 1981 and October 12, 1981, executed by R.C. Speights, Jr. in favor of William E. Hathorn amounted to leases of the life tenant's interest only, since the remainder interest had been previously leased to Amoco Production Company; and said leases to Hathorn merely granted Hathorn the veto power to prevent Amoco and its assigns from drilling a well on the subject land during the terms of said leases, but, being leases covering only the life tenant's interest, did not grant Hathorn any right to share in hydrocarbon production from the subject land nor did said leases grant Hathorn any right to interest on proceeds from production from the subject lands.
 VI.
 That proceeds from production attributable to the mineral interest that is the subject of this action should be paid to Amoco Production Company and System Fuels, Inc., subject to said parties paying a 3/16 royalty to R.C. Speights, Jr.
 VII.
 That the costs of the drilling, completion and production of the System Fuels, *Page 407 
Inc. Gas Unit 19-13 Well No. 1 attributable to the mineral interest subject to this action shall be born by System Fuels, Inc. and Amoco Production Company in accordance with the agreement of said parties.
 VIII.
 That no part of the proceeds from production attributable to the mineral interest that is the subject of this action, nor any interest on such proceeds, is due William E. Hathorn.
 THE LAW
The central question on this appeal concerns the validity of the mineral lease granted to Amoco from the remainderman, Burns. At issue is whether a remainderman may grant a valid lease absent joinder by the life tenant. All other issues are dependent on resolution of this question.
The law in Mississippi is well settled that oil in place is a part of the real estate and portions of the oil produced and paid as royalties represent the principal or corpus and only the interest thereon derived from any investment of such funds should be paid to the life tenant. Martin v. Eslick, 229 Miss. 234,90 So.2d 635 (1956); Martin v. Humble Oil and Refining Co.,199 F. Supp. 648 (S.D.Miss. 1960), affirmed on appeal 298 F.2d 163 (5th Cir. 1961). Therefore, the remainderman's (Burns) interest in the minerals vested at the time Sallie Clark gave him a deed, notwithstanding the fact that she reserved a life estate in herself.
Accepting that Burns' interest had vested, could he grant a valid lease? In Welborn v. Tidewater Association Oil Co.,217 F.2d 509 (10th Cir. 1954), the Tenth Circuit Court of Appeals addressed the right of an Oklahoma remainderman to grant an oil and gas lease. In facts very similar to those now at bar, Smith was the owner of a life estate and Garrett the owner of the remainder interest. Smith was the duly appointed guardian of Garrett, then a minor. Smith leased Garrett's remainder interest in the oil and gas on the subject property to Welborn. Subsequently, Smith and Garrett executed an oil and gas lease to another which was ultimately procured by Tidewater. Welborn demanded Tidewater release its lease because it constituted a cloud on the oil and gas lease held by him. The Tenth Circuit held:
 It is well settled that a remainderman may not make an oil and gas lease to permit immediate exploration and production without the consent of the life tenant. Likewise, a life tenant cannot drill new oil or gas wells, or lease the land to others for that purpose. A life tenant and the remainderman may lease the land by a joint lease and they may agree as to the division of the rents and royalties. In the absence of such agreements, the life tenant is not entitled to any part of the royalties, but is entitled only to the income from such royalties. (Emphasis added)
 The oil and gas lease to Welborn was wholly ineffective to permit Welborn to go upon the land during the existence of the life estate and explore for, develop, or produce oil and gas from the land.
 The records in the probate court of Coal County clearly showed that Smith was the owner of the life estate and Garrett of the remainder interest. As such guardian, Smith could only give a lease on the remainder interest of Garrett. Smith as owner of the life estate did not individually, expressly consent to the developing of the land or the production of oil and gas therefrom under the Welborn lease. The lease was made pursuant to a judicial sale. A sale by a guardian under an order and confirmation of the probate court in Oklahoma is a judicial sale and the rule of caveat emptor applies to such a sale.
 It follows that the most that Welborn acquired was a contingent right to go upon the land and develop it for oil and gas and produce oil therefrom after the death of the life tenant, in the event that death occurred prior to the *Page 408 
expiration of the primary term of Welborn's lease. (Emphasis added)
Welborn at 510, 511.
In Hemmingway, The Law of Oil and Gas, Section 5.2, page 175, 176 (1971), the author has this to say about the remainderman's right to lease his interest:
 Although such a leasehold interest may not be enjoined in absence of consent of the other owner, it is not correct to say that such leases are void in a strict sense. The interests of both a life tenant and a remainderman are alienable, and the lessee merely stands in the shoes of his respective lessor. It has been held that a lease from a life tenant is not intrinsically bad because it may contemplate waste. Even though the lessee from a life tenant may be enjoined by the remainderman from conducting geophysical operations, the lessee has the right to acquire the interest or consent of the remainderman. Likewise, the lessee of the remainderman has the right to enjoin waste by the life tenant of his assignees and also to develop the land upon the death of the life tenant, if this occurs prior to the expiration of the primary term of the lease.
Welborn at 510, 511.
Also, in 2 Williams and Myers Oil and Gas Law, § 512.2, page 637, the authors state: "The mere execution of a lease by either the life tenant or the owner of a future interest does not constitute a wrong to either party. As between the lessor and the lessee, the lease is valid." See also, Kuntz, Oil and Gas, § 8.4, *page 183. 
In this regard, the chancellor's opinion was completely in accord with the above cited authorities as he held that the lease to Amoco was valid to the extent of the interest that the Burnses had at the time they granted the lease; however, the chancellor's subsequent findings are in error.
Amoco obtained the Burnses remainder interest in the oil and gas on the property subject to Sallie Clark's life estate. As stated by the authorities cited above, particularly Welborn,
although the remainderman may validly lease his interest, that lease can in no way grant an immediate right to production absent joinder by the life tenant. Both the life tenant and the remainderman have a present interest in the minerals on the property and neither may work to defeat the interest of the other. Applying that rule, although Amoco obtained a valid lease of Burnses remainder interest, it did not have the right to present production. Under the lease from Burns, Amoco had no right to produce unless Mrs. Clark died within the term of the lease.
When Sallie Clark and Burns conveyed their interest to Speights by way of a five year term mineral deed, Speights took an interest subject to the lease Burns had given Amoco. Speights was therefore entitled to Sallie Clark's life estate and a remainder interest subject to Amoco's lease, including the 3/16ths royalty Burns had reserved when he leased the oil and mineral rights to Amoco. Therefore, Speights had no immediate right to production as he owned the entire life estate but the remainder interest was already subject to a valid lease.
What did Speights have to lease to Hathorn? Speights' lease to Hathorn was necessarily limited to the life estate he acquired from Sallie Clark. The remainder interest Speights had purchased from Burns was already subject to another valid lease. The lease to Hathorn gave him a 3/4 share of the interest to be made from the investment of the proceeds of the 13/16ths working interest of Amoco for the life of Sallie Clark.
The interests and rights of the parties are defined as follows:
 Amoco and Systems Fuels, Inc. — A valid remainder interest in the 13/16ths working interest plus actual cost of drilling and production.
 Speights — A 3/16ths royalty and a 1/4 share in the interest income on a 13/16ths working interest of Amoco for the life of Sallie Clark. *Page 409 
 Hathorn — A 3/4ths share of the interest on the 13/16ths working interest of Amoco for the life of Sallie Clark.
Amoco is not entitled to the use of the corpus of the 13/16ths working interest or any income from the investment of that sum until the death of Sallie Clark. All profits from that sum during the life of Sallie Clark belong to Speights and Hathorn to be divided as set out above. It is Amoco's duty to insure that the corpus of the 13/16ths working interest provides a fair rate of return for Speights and Hathorn whether it retains the 13/16ths and becomes personally liable for the interest or whether it invests that sum with a third party responsible for paying the interest. Because of the failure of the chancery court to define the parties' interests as we have set them out above, we hereby reverse and remand this cause for proceedings consistent with this opinion.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.