RENDERED:  NOVEMBER 13, 2020; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1621-MR

LISA HOGG                                                                               APPELLANT

v.                    APPEAL FROM LETCHER CIRCUIT COURT
                      HONORABLE JAMES W. CRAFT, II, JUDGE
                      ACTION NO. 16-CI-00305

DOROTHY ANN HOGG AND
THE ESTATE OF JEFFREY HOGG                                       APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, DIXON, AND K. THOMPSON, JUDGES.

DIXON, JUDGE:  Lisa Hogg appeals from the judgment following bench trial

determining that her property consists of 0.4 acres encumbered by a 12-foot right-

of-way running east to west over the property, entered on October 8, 2019, by the

Letcher Circuit Court.  Following review of the record, briefs, and law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

This case, like any property dispute concerning multiple deeds between family members, is somewhat complicated. In order to streamline our Opinion and provide as clear as possible an understanding of the relevant facts and law, we only discuss the conveyances pertinent to the issues on appeal.

Blackburn Hogg[1] and his wife, Marie, owned property in fee simple absolute in Letcher County, which they conveyed to their son, Christopher. Christopher, in turn, granted Blackburn a life estate in the property and then later conveyed his remainder interest to his brother and his wife, Jeffrey and Dorothy. They, in turn, conveyed their remainder interest in only a small tract of this property back to Christopher and his wife, Joella, by deed dated July 19, 1996, and deed of correction dated September 3, 1996. The deeds purported to except a 12-foot right-of-way running east to west across that portion of the property. The deed of correction noted that the conveyance is subject to the life estate interest of Blackburn. Approximately one year later, Christopher and Joella conveyed their remainder interest in the tract to David[2] (Jeffrey and Christopher's brother) and his wife, Lisa. On the same date, Blackburn conveyed his life estate to the same tract

---

[1] Blackburn passed away on October 15, 1997.

[2] David passed away in 2016, prior to the filing of the complaint.

to David and Lisa so that the remainder and life estate interests merged. The small tract was surveyed on April 23, 2016, by Jerry Ingram, Public Licensed Surveyor (PLS). The Ingram survey depicts the property as consisting of 0.4 acres and indicates the location of the 12-foot right-of-way described in the July 19, 1996, deed.

On November 30, 2016, Jeffrey[3] and Dorothy filed this quiet title action, alleging that Lisa claims to own more property than was conveyed by them to Christopher and Joella. They further assert that Lisa has interfered with the quiet use and enjoyment of their property and that she has obstructed their use of the easement across her property described in the July 19, 1996, deed.

Lisa answered and counterclaimed that she was conveyed an acre, more or less, and that according to a survey of her property performed by Rick Gadbury, she owns 1.13 acres. Lisa claimed she has controlled such property since August 1997. She also asserted that any easement over her property had been abandoned and was not, therefore, enforceable as to her property.

A bench trial was ultimately held on March 19, 2019, and July 22, 2019. After hearing testimony and visiting the property with trial counsel, the trial court entered its judgment agreeing with Jeffrey and Dorothy and finding that

---

[3] After this action was initiated, Jeffrey passed away and was replaced as a party to this action by his estate.

Lisa's property is the same as identified on the Ingram survey and that such lot was encumbered by a 12-foot right-of-way running from east to west. This appeal followed.

## STANDARD OF REVIEW

The standard of appellate review in land dispute actions is well established:

> [F]actual findings "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the [trier of fact] to judge the credibility of the witnesses." A factual finding is not clearly erroneous if it is supported by substantial evidence. Substantial evidence is evidence of substance and relevant consequence sufficient to induce conviction in the minds of reasonable people. "It is within the province of the fact-finder to determine the credibility of witnesses and the weight to be given the evidence." With respect to property title issues, the appropriate standard of review is whether the trial court was clearly erroneous or abused its discretion, and the appellate court should not substitute its opinion for that of the trial court absent clear error.

*Cole v. Gilvin*, 59 S.W.3d 468, 472-73 (Ky. App. 2001) (footnotes omitted).

## SURVEY

On appeal, Lisa contends the trial court erred in adopting the Ingram survey as the correct depiction of her land. Both July 19, 1996, and August 14, 1997, deeds describe the land at issue as:

> BEGINNING on a point in the center of Big Bottom Branch, approximately 125 feet, East of Big Bottom Branch's intersection with Kings Creek; thence up the

hill some Southerly course to an iron pin; thence some easterly course around the hill to an iron pin; thence down the hill some Northerly course to a point in the center of Big Bottom Branch; thence down said Branch as it meanders to the BEGINNING; containing one acre more or less.

Jerry Ingram testified that based on this description, he was able to locate monuments (roof bolts) on all four corners of the property. By contrast, Rick Gadbury, Lisa's surveyor, testified that he was only able to find three roof bolts, which he believed marked corners of the property.

Lisa claims the trial court erred in assigning greater weight to Ingram's survey than Gadbury's because the property description only mentioned two markers. She claims two of the points in the deed description are points at the center of a waterway and, thus, no marker could be placed. However, this argument fails to account for Gadbury's testimony that he also found more than two markers. Lisa further argues the court gave less weight to Gadbury's survey because it found the third roof bolt was located by him after Lisa told him there was a roof bolt in the back of the property. She also attacks the trial court's statement that it was concerned that Gadbury made his determination of the property lines by the wording in the deed and testified that the information from previous owners was not important to him. Additionally, Lisa contends the Gadbury survey is the only one that complies with the estimated acreage of an

acre, more or less. However, both surveyors testified that phrase was the least reliable in the deed and not controlling in surveying the property described therein.

In its judgment, the trial court stated:

> The third and fourth calls in the description cause the Court to find the testimony and opinion of Jerry Ingram, PLC, to be extremely credible. These calls state as follows: "thence some easterly course around the hill to an iron pin; thence down the hill some northerly course to a point in the center of Big Bottom Branch." As depicted on the map submitted by Mr. Gadbury, Mr. Gadbury's line does not go "around the hill" but goes in a straight line to a point beside Big Bottom Branch. Furthermore, at the point where Mr. Gadbury located his third monument (roof bolt) there is no going down the hill in a northerly course to a point in the center of Big Bottom Branch.

This was the crux of the trial court's decision. It is also unchallenged by Lisa. This finding was supported by substantial evidence and, therefore, is neither clearly erroneous nor an abuse of discretion. Thus, we must affirm.

## EASEMENT

Lisa further argues the easement was void *ab initio* as Blackburn was not a signatory to it. This issue highlights how, in multiple deeds between family members, such transfers can quickly become complicated.

In order to determine whether an easement was created herein, we first review what an easement is and how one is created. An "easement" is "an interest that encumbers the land of another." 25 AM. JUR. 2D *Easements and*

*Licenses* § 1 (Nov. 2020 update) (footnote omitted). "A main characteristic of easements is that they are *nonpossessory* interests in land, or areas above or below it, which entitle the easement holder to the right to use the land for a specific, limited purpose that is not inconsistent with the general use of the property by the owner." *Id.* (emphasis added) (footnotes omitted). Our Court has described easements and their creation as follows:

> Easements are created by express written grant, implication, prescription or estoppel. An express easement is created by a written grant with the formalities of a deed. *Loid v. Kell*, 844 S.W.2d 428, 429 (Ky. App. 1992). The nature of an easement is distinguishable from a mere license in that it is an incorporeal right - always separate and distinct from the right to occupy and enjoy the land itself. *Lyle v. Holman*, 238 S.W.2d 157, 159 (Ky. 1951). It is a privilege or an interest in land and invests the owner with "privileges that he cannot be deprived of at the mere will or wish of the proprietor of the servient estate." *Louisville Chair & Furniture Co. v. Otter*, 219 Ky. 757, 294 S.W. 483, 485 (1927). In contrast to a restrictive covenant that restricts the use and enjoyment of property, an easement confers a right upon the dominant tenement to enjoy a right to enter the servient tenement. *See Scott v. Long Valley Farm Kentucky, Inc.*, 804 S.W.2d 15, 16 (Ky. App. 1991).

*Dukes v. Link*, 315 S.W.3d 712, 715 (Ky. App. 2010).

We now turn to the relevant facts pertaining to whether an easement was created herein. When Jeffrey and Dorothy conveyed their remainder interest in the small tract of land to Christopher and Joella, they excepted out of the

conveyance a right-of-way, or express easement. At the time, Blackburn still owned a life estate in the property. A "life estate" is "an estate whose duration is limited to the life of either the party holding it or some other person; it presupposes a fee existing elsewhere than in the life tenant." 31 C.J.S. *Estates* § 36 (Sept. 2020 update). "A 'life estate' grants ownership of a property to another person for the duration of the other person's life, or the life of some other person, and grant[s] the holder the right to possess, control, and enjoy the property during the holder's lifetime." *Id.* (footnotes omitted). We here note that "[f]ee simple estates, life estates, and remainders alike vest at the time of their creation although the time of their enjoyment may be suspended." *Goodloe's Tr. and Adm'r v. Goodloe*, 292 Ky. 494, 166 S.W.2d 836, 839 (1942).

Lisa argues that an express easement could not be created without consent of the holder of the present possessory and ownership interests: Blackburn. Consequently, she claims that by operation of law, the easement was never valid. We disagree.

This particular issue appears to be an issue of first impression in our Commonwealth. Thus, we must extrapolate from well-established principles within our jurisdiction and review neighboring jurisdictions for further guidance.

"It is clear that one cannot create an easement in land *belonging* to another person." 3 KY. PRAC. *Real Estate Transactions* § 11:19 (Oct. 2019 update)

-8-

(emphasis added) (footnote omitted). This refers to ownership. Only an "owner may convey any interest in real property[.]" KRS[4] 382.010. While Blackburn held a life estate interest in the property, he was its owner. 31 C.J.S. *Estates* § 36. However, Jeffrey and Dorothy, as remaindermen, also had certain present and future ownership rights, even if their full legal enjoyment could not be realized until the termination of the life estate. *See Goodloe*, 166 S.W.2d at 839.

It is well-settled that "[a] remainderman generally can sell or convey her remainder interest in realty even though the date of full possession and enjoyment is not due, but a remainderman cannot convey the life tenant's interest." 31 C.J.S. *Estates* § 104 (Sept. 2020 update) (footnotes omitted). Our sister courts have also recognized, "[a] remainderman does not have the right of possession of the real estate during the existence of a life tenancy therein[;]" however, "[a] remainderman may sell and convey or contract in reference to a remainder estate." *Statler v. Watson*, 68 N.W.2d 604, 607 (Neb. 1955) (citations omitted). "[T]he owner of a vested remainder in lands has a definite and fixed estate therein which he may convey or encumber." *Oldham v. Noble*, 66 N.E.2d 614, 618 (Ind. Ct. App. 1946). "An estate is vested where it is a determination of right of present enjoyment or a present right of future enjoyment." *In re Williams' Will*, 24 Misc. 2d 774, 780, 210 N.Y.S.2d 383, 388 (Sur. 1959). "A vested remainderman in

---

[4] Kentucky Revised Statutes.

lands has a present estate or interest therein which has the character of absolute ownership, Black's Law Dictionary, 4th Ed., p. 1734, and though the enjoyment of the interest is postponed to the future, it is, nevertheless, a present interest which may be sold by conveyance devised by will or levied on and sold under process." *Oliver v. Irvin*, 125 S.E.2d 695, 696 (Ga. Ct. App. 1962) (citations omitted).

It is widely accepted in our Commonwealth that "[a]ny interest in, or claim to, real estate may be disposed of by deed, or will, in writing." *Hurst v. Russell*, 257 Ky. 78, 77 S.W.2d 355, 356 (1934) (citation omitted). It is also known in our Commonwealth that remaindermen have the power to mortgage their interest. *Id.*

Somewhat similarly, our sister courts have held "a grantor of a term mineral interest who reserves a *future interest* may agree by express language in the conveyance to allow the *future interest* to be subject to an oil and gas lease granted by the term mineral interest holder (grantee) during the term of the mineral interest." *RLM Petroleum Corp. v. Emmerich*, 896 P.2d 531, 535 (Okla. 1995) (emphasis added). Even so, "[n]either a life tenant nor a remainderman can alone execute a valid mineral lease without the joinder of the other." *Lowrance v. Whitfield*, 752 S.W.2d 129, 134 (Tex. Ct. App. 1988) (citation omitted). While a remainderman alone cannot execute a valid *present* production mineral lease without the joinder of the life estate holder, the remainderman can burden his

*future* production with a valid mineral lease. "Although such a leasehold interest may not be enjoined in absence of consent of the other owner, it is not correct to say that such leases are void in a strict sense. The interests of both a life tenant and a remainderman are alienable, and the lessee merely stands in the shoes of his respective lessor." *Hathorn v. Amoco Production Co*., 472 So. 2d 403, 408 (Miss. 1985) (citation omitted). "The mere execution of a lease by either the life tenant or the owner of a future interest does not constitute a wrong to either party. As between the lessor and the lessee, the lease is valid." *Id.* (citation omitted). Said another way, "although the remainderman may validly lease his interest, that lease can in no way grant an immediate right to production absent joinder by the life tenant." *Id*.

By extrapolation, it may be inferred from case law within our Commonwealth and from our sister jurisdictions that remaindermen not only have the right to transfer their interest in property but also have the right to encumber their interest. The principle that a remainderman may encumber their interest with a mortgage or a lease is analogous to their ability to encumber their interest with an easement.

While Jeffrey and Dorothy owned a remainder interest in the property, they were free to transfer their interest and were also free to encumber that interest in the property with an easement without Blackburn's consent and signature.

-11-

However, as a remainder interest, the encumbrance would only become effective once the life tenancy expired. The deed of correction entered into by Jeffrey, Dorothy, Christopher, and Joella specifically stated the conveyance was subject to Blackburn's life estate interest, which was not extinguished until August 14, 1997. On that date, Lisa and David were deeded the life estate and remainder interests in the property, which merged and made the easement enforceable. Accordingly, the trial court did not err in finding the July 19, 1996, deed created an express easement.

Lisa further alleges the fact the easement was not described in the August 14, 1997, deed is an absolute defense. However, in *Dukes v. Link*, 315 S.W.3d at 716, another panel of our Court observed the general rule as found in 25 AM. JUR. 2D *Easements and Licenses in Real Property* § 93 (2004):

> A person who purchases land with knowledge or with actual, constructive, or implied notice that it is burdened with an easement in favor of other property ordinarily takes the estate subject to the easement. On the other hand, a bona fide purchaser of land without knowledge or actual or constructive notice of the existence of an easement in such land generally takes title free from the burden of the easement. This rule is broad enough to include all easements, whether created by implication, prescription, or express grant. However, one who purchases land burdened with an open, visible easement is ordinarily charged with notice that he or she is purchasing a servient estate.
>
> Under the general rule that a purchaser of land subject to the burden of an easement takes the estate

> subject to the easement if he or she has notice of its existence at the time of purchase, *the proper recordation of the instrument containing the grant of the easement is sufficient notice.*

(Emphasis added.) The *Dukes* Court went on to conclude "that the general rule applicable to easements in this Commonwealth is that the recording of the instrument that grants an easement by a common grantor binds a subsequent purchaser of the tract burdened by the easement *regardless of whether it is included in the purchaser's deed.*" *Id*. at 717 (emphasis added). Here, the July 19, 1996, deed granting the express easement was properly recorded. Under *Dukes*, this constitutes sufficient notice of the express easement to make same valid and enforceable against Lisa, even without the easement being included in her deed.

### ADVERSE POSSESSION

Lisa also contends that if she did not obtain the 1.13 acres depicted by the Gadbury survey by deed, then she acquired such land by adverse possession. The elements of adverse possession are "actual possession; open and notorious possession; exclusive possession; [and] hostile possession" for a period of at least 15 years. *Cowherd v. Brooks*, 456 S.W.2d 827, 830 (Ky. 1970). *All* of these elements must be met for the entirety of the required 15-year period. Failure to prove even one of the elements is fatal to an adverse possession claim.

Lisa asserts that she pled her claim of adverse possession in her answer and counterclaim. However, her claim concerning the hostile element of

-13-

adverse possession was notably absent from the first allegations contained in her counterclaim, and only weak evidence was later presented at trial. Lisa testified at trial that David constructed a storage building on Jeffrey and Dorothy's property without their permission. Her testimony was directly contradicted by the testimony of Dorothy, however, who testified Jeffrey had given David permission to erect the building on their property. The only undisputed evidence of hostile possession was Lisa's parking of cars and construction of fences after David's death in 2016, which interfered with use of the easement. These actions were not undertaken for a period sufficient to satisfy the 15-year requirement to establish adverse possession. As such, substantial evidence supports the trial court's declination to find adverse possession herein as Lisa failed to demonstrate that her possession of the property was hostile for the required period of time. Lisa's failure to present proof of every element required for adverse possession is fatal to this claim. As a result, the findings of the trial court will remain undisturbed.

## EVIDENTIARY RULINGS

The standard of review concerning a trial court's evidentiary rulings is for abuse of discretion. *Tumey v. Richardson*, 437 S.W.2d 201, 205 (Ky. 1969). "The test for an abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound reasonable principles." *Penner v. Penner*, 411 S.W.3d 775, 779-80 (Ky. App. 2013) (citation omitted).

Lisa alleges that the trial court erroneously admitted into evidence Plaintiff's Exhibit 8 and the testimony of Coy Hogg in violation of KRE[5] 402. Plaintiff's Exhibit 8 was an agreement between Lee (Blackburn's brother), Lee's wife, Sophia, Blackburn, and Marie concerning an easement across the property. Coy testified concerning the creation of the agreement. Lisa claims the trial court relied on this evidence in its findings and conclusions. While the court stated the contract was supporting evidence concerning the easement, there is certainly still substantial evidence supporting the court's findings apart from the agreement. Contrary to Lisa's assertions, any error in admitting the exhibit and testimony was, therefore, harmless.

## CONCLUSION

Therefore, and for the foregoing reasons, the judgment entered by the Letcher Circuit Court is AFFIRMED.


ALL CONCUR.


| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEES: |
|---|---|
| Otis Doan, Jr. | James A. Hubbard |
| Harlan, Kentucky | Isom, Kentucky |

---

[5] Kentucky Rules of Evidence.