In the Matter of the Accounting of JOHN H. KROOSS, as Executor of ELISE KROOSS, Deceased Executrix of HERMAN KROOSS, Deceased, and JOHN H. KROOSS, as Administrator C. T. A. of HERMAN KROOSS, Deceased, Respondent. H. PETER MAUE, as Executor of FLORENCE K. MAUE, Deceased, Appellant.

Argued April 4, 1951; decided May 24, 1951.

*James N. Vaughan, James A. Delehanty, William Indursky* and *Jacob Neuthaler* for appellant. I. The order made by the Appellate Division is erroneous because it finds an intention in the will which is nonexistent in point of fact. The Appellate Division fell into error largely because it made a mistake of fact from which followed a misconception of the issue. (*Staples* v. *Mead,* 152 App. Div. 745, 159 App. Div. 922, 214 N. Y. 625; *Moore* v. *Littel,* 41 N. Y. 66; *Matter of Watson,* 262 N. Y. 284; *De Korwin* v. *First Nat. Bank of Chicago,* 179 F. 2d 347.) II. Here a daughter received a vested remainder subject to be

divested if two conditions were satisfied. Since only one of said conditions was satisfied the remainder interest of the daughter never was divested. (*Staples* v. *Mead*, 214 N. Y. 625; *Livingston* v. *Greene*, 52 N. Y. 118; *Byrnes* v. *Stilwell*, 103 N. Y. 453; *Matter of Tienken*, 131 N. Y. 391; *Matter of Tompkins*, 154 N. Y. 634; *Connelly* v. *O'Brien*, 166 N. Y. 406; *Stringer* v. *Young*, 191 N. Y. 157; *Marsh* v. *Consumers Park Brewing Co.*, 220 N. Y. 205; *Matter of Banker*, 248 N. Y. 596; *Matter of Bolton*, 282 N. Y. 728.)

*David Ecker* and *Michael J. O'Reilly* for respondent. I. Implicit in the language of the dispository paragraph of the will is the condition of survivorship of the life tenant. The testator thereby provided clear evidence of his intention to leave the remainders merely tentative subject to being defeated by death of the remaindermen prior to the life tenant. (*Matter of Buechner*, 226 N. Y. 440; *Brown* v. *Gardner*, 233 N. Y. 261; *Lawrence* v. *Calam*, 236 N. Y. 168; *New York Life Ins. & Trust Co.* v. *Winthrop*, 237 N. Y. 93; *Vanderzee* v. *Slingerland*, 103 N. Y. 47; *Nellis* v. *Nellis*, 99 N. Y. 505; *Matter of Gates*, 239 App. Div. 666; *Matter of Elderd*, 138 Misc. 645; *Matter of Robinson*, 187 Misc. 489; *Cox* v. *Wisner*, 43 App. Div. 591, 167 N. Y. 579.) II. The will imports futurity and creates a substitutional gift over. Thus, there could be no vesting. The failure to meet the condition of survivorship expressed in the will and provided by the substitutional gift over required the holding of intestacy. (*Matter of Burdsall*, 128 Misc. 582, 221 App. Div. 756; *Bowman* v. *Bowman*, [1899] A. C. 518; *Matter of Mathews*, 154 Misc. 779; *Matter of Sperling*, 133 Misc. 834.)

FULD, J. Herman Krooss died in 1932. He was survived by his wife Eliese and his two children, a son, John Krooss, and a married daughter, Florence Maue. By his will, he gave his residuary estate, real and personal, to his wife, "to have and to hold the same for and during the term of her natural life," with the power to use any part of it for her support and maintenance that she deemed necessary; no trust was created. The will further provided:

"Upon the death of my beloved wife, Eliese Krooss, I then give, devise and bequeath all the rest, residue and remainder of my estate, as well real as personal, and wheresoever situate,

to my beloved children, John H. Krooss and Florence Maue, nee Krooss, share and share alike, to and for their own use absolutely and forever.

"In the event that either of my children aforesaid should die prior to the death of my beloved wife, Eliese Krooss, leaving descendants, then it is my wish and I so direct that such descendants shall take the share their parent would have taken if then living, share and share alike, to and for their own use absolutely and forever."

Florence Maue died, without having had descendants, in 1947, three years before the life beneficiary Eliese. Some months after Eliese's death, Florence's husband, as executor of his wife's estate, instituted the present proceeding in the Surrogate's Court of Bronx County to compel John Krooss, as executor under Eliese's will and as administrator *c.t.a.* of Herman Krooss' estate, to render and settle his respective accounts. In order to determine whether the executors of Florence's estate had status to prosecute the proceeding, the surrogate was required, initially, to construe Herman's will. He decided that the interest given to Florence was vested at the testator's death, subject to be divested only in the event of her predeceasing her mother leaving descendants, that it passed under her will, and that her husband, as executor, was entitled to bring the action.[1] The Appellate Division modified that determination. Disagreeing with the surrogate's interpretation, the Appellate Division construed the will as imposing upon each of the remaindermen a condition that he or she survive the life beneficiary; Florence having died without children before Eliese, that condition was not met, and, concluded the court, as to Florence's share in the remainder, Krooss died intestate.

The law has long favored a construction of language in deed and will that accomplishes the vesting of estates; such a result is preferred because, among other things, it enables property to be freely transferred at the earliest possible date. (See, e.g., *Matter of Watson,* 262 N. Y. 284, 300; *Dougherty* v. *Thompson,*

---

[1] In her will, Florence left her residuary estate in trust to her husband and to her brother John, as trustees, to pay the net income therefrom to the husband for life; on his death, the principal was to be distributed between Florence's two nephews, the children of her brother John, if living, and to their issue *per stirpes* if either should die before the termination of the trust.

167 N. Y. 472, 483; *Connelly* v. *O'Brien,* 166 N. Y. 406, 408; *Hersee* v. *Simpson,* 154 N. Y. 496, 502; *McArthur* v. *Scott,* 113 U. S. 340, 378.) Accordingly, the courts are intent upon restricting defeating events to the exact circumstances specified.

The will under consideration is simple in language and simple in plan. The testator gave his widow a life estate and a power to use the principal if it proved necessary for her maintenance and support. What remained after her death he gave " absolutely and forever " in equal shares to his two children, Florence and John. Had the will stopped at that point, there would be no question that the remainders were vested. And, since that is so, additional language will not be read as qualifying or cutting down the estate unless that language is as clear and decisive as that which created the vested remainder. (See, e.g., *Goodwin* v. *Coddington,* 154 N. Y. 283, 286; *Byrnes* v. *Stilwell,* 103 N. Y. 453, 460.) The further language used by the testator in this case demonstrates, not that he was rendering the vesting of the estates in his children conditional upon survival of the life beneficiary, but that he was willing to have those estates divested only upon the combined occurrences of two further events. He explicitly provided, if either of his children died before his wife, " leaving descendants," then " such descendants shall take the share the parent would have taken if then living ". If the words used mean what they say, then, divestiture of the remainder estates depended upon the happening of two plainly expressed and stipulated conditions: (1) the child, Florence or John, must die before the life beneficiary, and (2) the child so dying must leave descendants. Only if both of those conditions came to pass was the remainder — by apt and unequivocal language already vested in Florence and John — to be divested and bestowed instead upon the descendants of him or her who might have died.

When a will contains language that has acquired, through judicial decision, a definite and established significance, the testator is taken to have employed that language in that sense and with that meaning in mind. (See, e.g., *Matter of Wittner,* 301 N. Y. 461, 465; *Manion* v. *Peoples Bank of Johnstown,* 292 N. Y. 317, 321; *Washbon* v. *Cope,* 144 N. Y. 287, 297–298; *Keteltas* v. *Keteltas,* 72 N. Y. 312, 314–315; *Livingston* v. *Greene,* 52 N. Y. 118, 124; see, also, 2 Page on Wills, § 916, pp. 793–794;

1 Davids, New York Law of Wills, § 492, p. 806.) The thought was well expressed by this court in the *Keteltas* case (*supra,* 72 N. Y. 312, 314–315) : " The primary object in construing wills is to ascertain the intention of the testator, and when that has been ascertained, it is to be implicitly obeyed, however informal the language in which such intention has been conveyed. But the intention is not matter of speculation or arbitrary conjecture. It is sought for in the language used; and when language or a certain collocation of words has once received judicial construction, precedents are formed which are followed in later cases. It is a general rule of construction that when a testator uses technical words, he is presumed to employ them in their legal sense, and that words in general are to be taken in their ordinary and grammatical sense unless the context clearly indicates the contrary."

Over the years, the courts have uniformly held that language such as that used by the testator here, or language substantially identical, creates a vested remainder in fee subject to be divested by the remainderman's failing to survive the life beneficiary, *if, but only if,* such remainderman leaves issue or descendants surviving. (See, e.g., *Staples* v. *Mead,* 214 N. Y. 625, affg. 159 App. Div. 922, 152 App. Div. 745; *Byrnes* v. *Stilwell, supra,* 103 N. Y. 453; *Livingston* v. *Greene, supra,* 52 N. Y. 118; *Smiley* v. *Bailey,* 59 Barb. 80; *Flanagan* v. *Staples,* 28 App. Div. 319; *Gray* v. *Garman,* 2 Hare 268; *Matter of Bright's Trust,* 21 Beav. 67; *Remmers* v. *Remmers,* 280 Ill. 93; see, also, Note, 109 A. L. R. 5.) *Staples* v. *Mead* (*supra,* 214 N. Y. 625, affg. 159 App. Div. 922, 152 App. Div. 745) furnishes a helpful precedent. The testator gave the residue of his estate to executors in trust for the life of his wife, with directions to pay one third of the income to her, one third to her daughter Sarah and one third to grandchildren of testator, living at his death and to the estate of any grandchild who died leaving issue. The will further provided that, upon the death of the wife, the trust was to continue for the life of the daughter, with income payable one half to the daughter and the other half to the grandchildren and the issue of deceased grandchildren. The will then went on to provide that " upon the death of my said daughter I then give, devise and bequeath my entire estate unto my grandchildren and to the issue of any

grandchild who may have died *leaving issue* \* \* \* share and share alike.'' (Emphasis supplied.) A grandchild, John Mead, died during Sarah's lifetime. Just as did Florence in the case before us, John left a will and no issue. Plaintiffs claimed that the grandchild John took a vested remainder, subject to be divested only upon his death leaving issue; accordingly, plaintiffs urged, upon John's death without issue his estate remained vested and passed under his will. It was the defendants' contention that the interest given to John ceased if he died before the termination of the life estate, and, since that did occur, the estate that would otherwise have gone to John went to the other grandchildren who survived the life tenant. The Appellate Division held — and the Court of Appeals affirmed on appeal from both the final judgment (159 App. Div. 922) and the interlocutory judgment (152 App. Div. 745) — that the will bestowed a vested remainder upon the grandchild John and that such remainder was defeated only if he (1) died before his mother and (2) left issue. In the course of its opinion, the court wrote (152 App. Div., at pp. 748–749): '' It is true that the death of John \* \* \* before his mother, leaving issue, was a contingency upon which his estate might have been divested, and vested in his issue; but this was not an event upon which the vesting in him depended. (*Doscher* v. *Wyckoff*, 132 App. Div. 139, 142.) ' It was not a gift limited to take effect upon an uncertain event; it was a gift, which the uncertain event might chance to defeat.' (*Stringer* v. *Young*, 191 N. Y. 157, 162.) *The event in this case, the death of the donee leaving issue, did not happen, and his gift was not defeated, but remained vested.*'' (Emphasis supplied.)

Leading commentators in the field, after reviewing the cases, have expressed themselves in similar fashion. (See 2 Powell on Real Property [1950], §§ 330–331, pp. 728–737; 2 Redfield on Law of Wills [1866], § 65, pp. 648–649; 3 Restatement, Property, § 254, Comment a, Illustration 1, particularly Example II, pp. 1284–1286.) Thus, Professor Richard R. Powell of Columbia University Law School and Reporter on Property for the American Law Institute, in his recent work on the Law of Real Property, considers the subject at some length and sums up the law in this way (*op. cit.*, § 330, pp. 729–730): '' Supplanting limitations differ, in that some provide a taker who is to become

the substitute whenever the prior taker fails to survive, while others provide a taker who is to become the substitute only under some circumstances. In cases of the second type, the constructional preference for early indefeasibility causes the requirement of survival to be strictly construed, and to operate only under the exact circumstances stipulated. * * * Similarly, in a gift ' to my wife B for life, then to my children and the issue of those of my children who may be dead leaving children,' the interest of a child of the testator who dies without surviving issue is indefeasible.''

Turning to the will before us, we find that, at the expiration of the wife's life estate, the testator '' then '' gave the remainder to his children '' absolutely and forever.'' The use of the word '' then '' as an '' adverb of time '' must be, as it long has been, construed to relate solely '' to the time of enjoyment of the estate, and not to the time of its vesting in interest.'' (*Staples* v. *Mead, supra,* 152 App. Div. 745, 749, affd. 214 N. Y. 625.) Hence, the sole combination of events which could divest the '' absolute '' gift to the daughter Florence was her death before her mother, '' leaving descendants ''. Only one of the specified conditions was fulfilled; although Florence did predecease her mother, she did not leave descendants. Consequently, her absolute gift remained vested and was not defeated. Not only the language employed, but the omission of any '' words of survivorship '' (*Byrnes* v. *Stilwell, supra,* 103 N. Y. 453, 459) to indicate an intent that Florence's brother was to take if Florence died without children, illumines the testator's design to give his daughter a vested remainder.

One of the cases principally relied upon for a contrary conclusion — *Matter of Burdsall* (128 Misc. 582, affd. 221 App. Div. 756) — while superficially similar, is actually quite different. The will gave the remainder to two designated remaindermen, and went on to recite that, in the event that either died before the testator or before the life beneficiary, '' I give, devise and bequeath the share of such '' remainderman '' to her lineal descendants '' (p. 583). The surrogate, noting that the interest which the original remaindermen took '' did not become indefeasible and perfect '' during the life estate, held that '' the remaindermen had during their lives an interest in the estate, subject to be defeated by their death prior to the termination of the trust.

They took on the condition of survivorship '' (p. 584). As the very language demonstrates, the gift in the *Burdsall* case was to the remaindermen *or* their descendants and was not conditioned upon '' leaving descendants ''. Such an alternative gift as that in *Burdsall* imports a requirement of survival as to both alternative takers (3 Restatement, Property, § 252, p. 1270). On the other hand, the limitation in the will before us contains no such alternative gift. There was no such specific and unique disposition of the remainder in the event of Florence's death prior to that of her mother; it was to go to her descendants only if she left descendants surviving. In a word, not Florence's failure under *all* circumstances to survive was specified as a condition defeating her estate, but *only* her death before her mother if she left descendants.

The order of the Appellate Division should be reversed and the decree of the Surrogate's Court affirmed, with costs in this court and in the Appellate Division to all parties, appearing separately and filing separate briefs, payable out of the estate.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FROESSEL, JJ., concur.

Ordered accordingly.

