Dye, J. (dissenting).
The deed of trust in question was executed in New York on April 2, 1934. The settlor, Margaret Kemp Buchanan, who was a resident of Scotland and married to a British subject, executed the trust while here on a visit. The instrument provides that it be governed by the laws of this State. New York residents were appointed trustees to administer the trust property, all of which is located in New York.
The deed provides in pertinent part that after the grantor’s death and after the daughter, Margaret Jane Elizabeth Jardine Paterson, defendant-appellant herein, attains majority, the trustees shall collect and pay over the net income to her during her lifetime. Both events have occurred, that is, the grantor has died (in 1940), and the daughter (defendant-appellant) attained the age of 21 years in 1950. Since 1950 defendant-appellant has received the income of the trust under paragraph 3, which reads: “3. When said Margaret Jane Elizabeth Buchanan reaches the age of twenty-one years, if the said Grantor be then dead, then to pay over to said Margaret Jane Elizabeth Buchanan all of the net income annually during the rest of her life and so much of the principal sums of this trust from time to time as the Trustees may deem for the best interest of said Margaret Jane Elizabeth Buchanan.”
The trust assets remain almost the same today as at the time of the execution of the trust in 1934.. Such assets are-valued at approximately $700,000 and produce an annual income of about $35,000. Defendant-appellant and her husband mow -live in Scotland with their three infant children. Both are well -to do in their own right. Mrs. Paterson has an annual income of about $13,000 independently of this trust income; her husband has an annual income of about $28,000. They live within their means and there is no claim that the trust funds are needed for support or any extraordinary financial emergency.
*45 The decision to terminate the trust is for a wholly unrelated reason, namely, in the exercise of ordinary business prudence. It is an undisputed fact that, under existing tax statutes, the trust income payable to the life beneficiary is subject to a tax of 92%% made up of 42%% ordinary income tax, plus 50% surtax. When these rates are applied to the current annual income the tax collector takes $32,375 while the beneficiary, for whom the trust was created, gets a mere $2,625. Under the present arrangement if the life beneficiary dies the corpus would be subject to a British estate tax amounting to 65% which means that upon distribution the tax collector would take $455,000 nearly two thirds of the principal, while the remaindermen would get less than one third or about $245,000 a consequence which the trustor could scarcely have envisioned as being “ for the best interest ” of the beneficiary. By terminating the trust in the manner proposed, the income would only be subject to an ordinary income tax at a much lower bracket and the corpus would become available to the named remaindermen without deduction for tax. Obviously such a plan would not be detrimental to the beneficiary. She gets only a nominal amount from the income as it is. She doesn’t need the income and, on the other hand, she has a keen desire to have the estate so managed that the income will not be confiscated by the tax collector, but will be available for the education and support of her children and that the principal be preserved as nearly intact as possible following her demise.
Everyone connected with the case agrees that the trustees are acting honestly and in good faith. The controversy is whether they have the power to terminate the trust by paying out the entire corpus to the life beneficiary. The answer to a problem of this sort is a matter of intent, to be ascertained from a reading of the trust instrument in its entirety in the light of the circumstances under which it was made. We may not rely on a single word or phrase to spell out an intent that a fair reading of the whole does not warrant (Matter of Fabbri, 2 N Y 2d 236; Cabell v. Markham, 148 F. 2d 737; cf. April Productions v. G. Schirmer, Inc., 308 N. Y. 366).
The Special Term reads the trust document as vesting the trustees with an absolutely free and untrammeled discretion to deal with the trust estate, limited only by the obligation *46 to act honestly and in good faith, which was in no way inhibited by section 15 of the Personal Property Law.
The Appellate Division, in reversing the order of Special Term, took the view that what the trustees proposed to do was “ an unwarranted departure from the dispositive provisions of the * * # trust ’ ’. In their view, the settlor intended to benefit not only her daughter, but also the remaindermen and that, when she used the phrase “ best interest ” of the beneficiary, she in effect restricted the trustees to such invasion of principal as would benefit the cestui que trust. They were frank enough to concede that the proposed transfer would “in a sense * * * serve the beneficiary’s ‘best interest’ ”.
When fairly read, the trust instrument is instinct with a desire and intent on the part of the settlor to preserve her American estate for the benefit of her daughter and her daughter’s children. The settlor had been born in New York of American parents. She had a substantial expectancy in the estate of her mother. She had married a British subject and, in so doing, lost her American citizenship. She was concerned about the impact of her marital status on her American funds. Accordingly, she executed this trust in 1934, assigning to it certain shares which she owned in the family business and assigning the shares that would come to her upon her mother’s death. She named her mother and stepfather as trustees, to whom she gave very broad powers and authority, although she retained the right to withdraw, add to or substitute other securities and to change and revoke the trust instrument at will. Thereafter she made at least two changes. Because the property placed in trust and what she expected to receive in the future came from her mother, she provided that the trust income be paid to her mother and stepfather during their lifetime or until her own daughter (then an infant 5 years of age) reached the age of 21 years, when she was to receive the income for her life ‘ ‘ and so much of the principal sums * * * from time to time as the Trustees .may deem for the best interest of said Margaret Jane Elizabeth Buchanan [now Paterson].” These are the powers the trustees have exercised since the death of grantor in 1940 and, since Margaret has attained the age of 21, the only limitations on their powers have been removed save only what, in their sole discretion, *47 was for the ‘6 best interest ’ ’ of said Margaret. This included permission to “pay over” to the beneficiary “so much” of the principal sum from “time to time”. No limitation is placed on the amount to be paid, nor does such payment depend on financial need of the beneficiary for support or otherwise. “ So much ” was to be measured by the “ best interest ” of the beneficiary. The authority of the trustees to pay ‘ ‘ so much ’ ’ from “ time to time ” is not a restriction on payment of the whole if the trustees so decide, but merely an intimation that the trustees’ power would not be exhausted by payment of less than the whole (see Matter of Clark, 280 N. Y. 155).
It is true that, upon consummation, the economic status of the beneficiary will be reduced by the nominal amount of income available to her after taxes but, on the other hand, she will have in effect attained the equivalent of full enjoyment of the benefits of the trust. The beneficiary here is no worse off than the donor who detached certain bond coupons before they were due and gave them to his son, thereby precluding himself from the enjoyment of the income they represented. In saying that he was nonetheless taxable, the court observed: “ The enjoyment of the economic benefit accruing to him by virtue of his acquisition of the coupons is realized as completely as it would have been if he had collected the interest in dollars and spent them for the purposes named” (Helvering v. Horst, 311 U. S. 112, 117; cf. Helvering v. Clifford, 309 U. S. 331).
In dealing with finances for the benefit of others, the trust apparatus provides many advantages, principal of which is the flexibility and the benefits to be derived from the experienced and untrammeled discretion of dependable trustees to carry out the settlor’s intention. These trustees were in a particularly advantageous position to carry out the wishes and intentions of the settlor. She reposed complete confidence in them. They had been instrumental in creating the fund in the first place; they knew the family setup; were familiar with the settlor’s desires in respect to her American estate, that her daughter Margaret was then only 5 years of age, that when she reached 21 the settlor wanted her “best interest” taken care of. It was this aspect that was paramount and it Avas this she charged her trustees to perform. The principal trustee, Mr. Kemp, whose judgment was controlling, testified without contra *48 diction that the dominant purpose of the trust was to pass the trust property on to Mrs. Paterson after the death of the grantor when, in the judgment of the witness, it was for her “best interest” to have it. As we have seen, the settlor reposed in the trustees alone the responsibility of making that determination. Had they transferred the principal in more than one payment, no question could or probably would have been raised. What practical difference then is there in making the transfer in one payment1? To repeat: the trustees had the sole right and duty in their absolute discretion to pay “ so much” “from time to time” as they deemed “for the best interest ’ ’ of the beneficiary. To say they cannot do this is to defeat the clearly expressed intention of the settlor.
It would be most incongruous to hold that this trust must be continued until the beneficiary has died and it has been ascertained as a certainty whether any collateral, remote, contingent remaindermen, now unknown, are eligible to share in the distribution. Indefinite suspensions by means of trusts are not favored by New York law. They can be created for only limited and specified purposes (Matter of Fowler, 263 App. Div. 255, affd. 288 N; Y. 697). As we said in Carrier v. Carrier (226 N. Y. 114, 122): “ The welfare of society * * * does not tolerate limitations that will last throughout the ages ’ ’. Wills and trust agreements are construed in cases of doubt — and here I have no doubt — to vest property and not to leave it tied up or contingent (Matter of Krooss, 302 N. Y. 424).
The guardian ad litem has stressed at great length his contention that this is a spendthrift trust which the beneficiary is trying to destroy in violation of section 15 of the Personal Property Law. This, of course, is not so. The beneficiary consents to the payment over, but the determination to pay over is in the exercise of the trustees’ sole discretion. Section 15, as we read it, contemplates situations not in the beneficiary’s “best interest”. It has nothing to do with the underlying plan and purpose of this trust, as everything about it, including the trustees’ determination, is being done in the beneficiary’s ‘1 best interest ’ ’. There is no ambiguity in the direction to pay the income and principal in the circumstances. The only limitation is that of 1 ‘ best interest ’ ’ which the court below read as a restriction “for such objects and purposes as, in *49 their judgment, would be beneficial to the cestui que trust ’ \ That, of course, is exactly what the settlor intended, subject only to the restraint of acting honestly and in good faith. Here there is no improper motive. Management of funds in the light of tax laws is entirely legitimate. A careful search of the trust makes no mention of financial need or emergency. Only one restraint is imposed and that is to be measured by ‘ ‘ best interest ’ ’ of the beneficiary.
For these reasons, the judgment appealed from should be reversed and that of Special Term reinstated, with costs to all parties appearing separately, filing separate briefs, payable out of the trust funds.
Chief Judge Conway and Judges Desmond and Burke concur with Judge Fuld; Judge Dye dissents in an opinion in which Judges Froessel and Van Voorhis concur.
Judgment affirmed.