ESTATE OF BENJAMIN SHAPIRO, DECEASED, SAUL A. SHAPIRO AND STEPHEN SHAPIRO, EXECUTORS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Shapiro v. Commissioner
Docket No. 28404-90
United States Tax Court
T.C. Memo 1993-483; 1993 Tax Ct. Memo LEXIS 497; 66 T.C.M. (CCH) 1067; October 20, 1993, Filed *497 For petitioner: Bernard S. Mark and Richard S. Kestenbaum. For respondent: Steven R. Winningham and Brian Condon. HAMBLEN
HAMBLEN
MEMORANDUM OPINION HAMBLEN, Chief Judge: This matter is before the Court on the parties' cross-motions for partial summary judgment filed pursuant to Rule 121. [1]
The legal issue the parties seek to have adjudicated is whether, for valuation purposes, decedent's interest in a testamentary residuary trust established by his predeceased wife's estate was an annuity for the duration of his life or a life interest in payments from a trust, the duration of which was limited to a term certain. The characterization of decedent's interest in the testamentary trust controls both the valuation of decedent's interest, and the amount petitioner is entitled to claim as a credit under *498 section 2013 for the Federal estate tax that decedent's wife's estate paid with respect to the prior transfer of the interest to decedent. For purposes of deciding these cross-motions, we assume the following facts as submitted by the parties in their stipulations, pleadings, memoranda, and supporting documents. Decedent, Benjamin Shapiro, died testate on July 2, 1986. Petitioner timely filed its Federal estate tax return on or about October 6, 1987, reporting a total estate tax due of $ 1,197,127. On the return, petitioner claimed, pursuant to section 2013, a $ 460,751 credit for the Federal estate tax that was paid with respect to the prior transfer of a trust interest to decedent (sometimes referred to as TPT credit). Petitioner based the amount of the TPT credit on its valuation of decedent's interest in the trust, which petitioner claims was $ 943,425 on the date of Mrs. Shapiro's death. By notice of deficiency, dated September 28, 1990, respondent determined a deficiency in petitioner's Federal estate tax of $ 208,640.56. Most of the deficiency is attributable to respondent's partial disallowance of the $ 460,751 credit that petitioner claimed under section 2013. According *499 to respondent, petitioner miscalculated the amount of the TPT credit by mischaracterizing decedent's interest in the residuary trust as a "lifetime annuity" and by relying on Table A of section 20.2031-7(f), Estate Tax Regs., to compute its value. In the deficiency notice, respondent determined that decedent's interest is limited to a "term certain concurrent with one" life which, according to respondent, must be valued under the actuarial method described in section 20.2031-7(e), Estate Tax Regs. As a result of her computations, respondent determined that the fair market value of decedent's interest was $ 680,896 on the date of Mrs. Shapiro's death, and that petitioner, consequently, is only entitled to a TPT credit of $ 301,445.69. On the date the petition was filed, the legal residence of the executors, Stephen Shapiro and Saul A. Shapiro, was Croton, New York. Decedent's spouse, Mrs. Shapiro, died on February 7, 1986, less than 5 months before decedent's own death on July 2, 1986. Decedent was 91 years old when Mrs. Shapiro died. In her will and the codicil to her will, Mrs. Shapiro directed that the residue of her estate pass in trust to Mr. Shapiro for his life, and upon *500 his death, that the remainder of the trust pass to Mrs. Shapiro's children, Saul A. Shapiro (Saul) and Estelle Pascoe. Pertinent parts of Article 1 of the codicil direct that the residue of Mrs. Shapiro's estate be distributed to the trust and to her husband (the beneficiary) as follows: (A)(1) Annuity to my Husband. My trustee, or my executor to the extent this Trust has not been fully funded, shall pay to my husband or apply for his benefit an annuity of Three Hundred Thousand ($ 300,000.00) Dollars per year from my date of death during his life, no less frequently than annually, except that in the year of his death, they shall pay to his estate the proportionate amount of said annuity computed on a daily basis to the date of his death, less the portion, if any, of such annuity paid to him or applied for his benefit for such year. * * * [Emphasis added.] (2) Non-Cumulative Power of Withdrawal. My husband shall have the power in his absolute discretion to direct my trustee to pay to him out of the principal of this Trust in any taxable year of the Trust for federal income tax purposes, an amount or amounts not exceeding $ 5,000 in the aggregate and, in addition, *501 if he shall be living on the last day of such year, to withdraw an amount, if any, by which 5% of the then market value of the net principal of the Trust (not reduced by any income taxes chargeable to principal) exceeds the value of the property previously withdrawn by him in such year. * * *
The codicil to Mrs. Shapiro's will provides that the annuity payments to Mr. Shapiro "shall be made out of principal and income of such fund, and to the extent same is insufficient, out of the Balance of the Residuary Share." The codicil further provides that no estate tax shall be allocated against the share passing to her husband, and it references an agreement between Mrs. Shapiro and Saul whereby Saul was to advance the funds needed to pay any Federal estate tax due so that Mr. Shapiro would receive his share unreduced by the estate tax. The agreement between Saul and Mrs. Shapiro provides that the advance will be repaid from the remainder of the trust after Mr. Shapiro's death. Saul advanced Mrs. Shapiro's estate $ 1,022,081.26 to pay the Federal estate tax. On Schedule Q of petitioner's Federal estate tax return, petitioner claimed, pursuant to section 2013, a $ 460,751 credit *502 for the Federal estate tax that was paid by decedent's wife's estate on the prior transfer of the trust interest to decedent. The parties agree that petitioner is entitled to a credit under section 2013 and that the amount of the credit should be based on the fair market value of the property that passed to decedent on the date of Mrs. Shapiro's death. The parties do not agree, however, on the characterization of decedent's property interest, nor do they agree on the proper method of determining its fair market value. Rule 121(a) provides that either party may move for a summary adjudication upon all or any part of the legal issues in dispute. If there is no genuine issue as to any material fact, a decision may be rendered as a matter of law. Rule 121(b); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988). Petitioner and respondent agree that there is no genuine issue of material fact with respect to their motions and that the only legal issues are the characterization and proper method of computing the value of decedent's interest in the residuary trust for purposes of determining the amount of the TPT credit allowable. Section 2013 provides a credit *503 against a decedent's Federal estate tax where the decedent receives property in a transfer that was previously subject to Federal estate tax. The TPT credit is only available if the transferee-decedent dies within 10 years following, or 2 years prior to, the death of the transferor. Sec. 2013(a). The TPT credit was intended "to prevent the dimunition [sic] of an estate by the imposition of successive taxes on the same property within a brief period." Estate of Marks v. Commissioner, 94 T.C. 720, 727 (1990) (quoting S. Rept. 1622, 83d Cong., 2d Sess. 122 (1954)). The TPT credit is allowed for any beneficial interest in property. Sec. 2013(e). Thus, a life estate or lifetime annuity may qualify for the TPT credit even though the life estate or lifetime annuity will not be included in the transferee-decedent's gross estate and therefore is not subject to double taxation. Estate of Marks v. Commissioner, supra at 727; secs. 20.2013-1(a), 20.2013-4(a) Example (2), 20.2013-5(a), Estate Tax Regs. The justification for allowing a credit when the transferred interest is not included in the transferee-decedent's *504 estate is twofold: First, the transferred interest may produce income that might be taxable in the transferee-decedent's estate; and second, the transferred interest presumably will enable the transferee-decedent to conserve other assets that consequently would be subject to Federal estate tax in the transferee-decedent's estate. Holbrook v. United States, 575 F.2d 1288, 1290 (9th Cir. 1978); Estate of Sparling v. Commissioner, 552 F.2d 1340, 1343 n.8 (9th Cir. 1977), revg. and remanding 60 T.C. 330 (1973); Estate of Marks v. Commissioner, supra.
The TPT credit is based on the value of the property in the transferor's gross estate and does not depend on the value of the property in the transferee-decedent's gross estate. Sec. 2013(d). Section 2013(b) provides that the amount of the credit, subject to limitations, shall bear the same ratio to the total estate tax paid by the transferor's estate as the value of the transferred property bears to the total value of the transferor's taxable estate. Thus, the value of the property interest transferred to decedent *505 controls the amount of the TPT credit allowable to petitioner. Sec. 2013(d). Section 20.2013-4(a), Estate Tax Regs., provides guidance as to when and how decedent's interest in the residuary trust is to be valued: If the decedent received a life estate or remainder or other limited interests in property included in the transferor's gross estate, the value of the interest is determined as of the date of the transferor's death on the basis of recognized valuation principles (see especially secs. 20.2031-7 and 20.2031-10). * * * [Emphasis added. [2]] *506 Section 20.2031-7(a)(1), Estate Tax Regs., provides that "the fair market value of annuities, life estates, [and] terms for years * * * is their present value determined under this section." Section 20.2031-7(a)(2), Estate Tax Regs., further provides that: The present value of an annuity * * * which is dependent on the continuation or termination of the life of one person is computed by the use of Table A in paragraph (f) of this section. * * * [However,] if the interest to be valued is dependent upon * * * a term certain concurrent with one or more lives, see paragraph (e) of this section. * * *
Petitioner and respondent agree that the fair market value of decedent's interest in the testamentary trust is equal to its present value on the date of Mrs. Shapiro's death, determined actuarially on the basis of the "recognized valuation principles" contained in section 20.2031-7, Estate Tax Regs., and to which section 20.2013-4(a), Estate Tax Regs., refers. However, as a result of the parties' differing characterizations of decedent's interest, they disagree as to which paragraph of section 20.2031-7, Estate Tax Regs., applies. In characterizing decedent's interest, petitioner *507 relies on the fact that decedent's bequest called for the payment of an "annuity of Three Hundred Thousand (300,000) Dollars per year * * * during his life" plus a noncumulative power to withdraw up to 5 percent of the market value of the trust corpus each year. Petitioner argues that decedent's bequest is thus properly categorized as an "annuity" under section 20.2031-7(a)(2), Estate Tax Regs., because Mrs. Shapiro's will makes the periodic payments "dependent on the continuation or termination of the life of one person". Petitioner maintains that it therefore properly relied on Table A of paragraph (f) to compute the present value of decedent's interest in accordance with the clear directive of section 20.2031-7(a)(2), Estate Tax Regs. In computing the present value of decedent's interest, petitioner assumed that there would be at least $ 1,000,000 in the corpus of the residuary trust each year of decedent's remaining life, and that he would exercise his right to withdraw corpus funds in the amount of $ 50,000 each year. Thus, according to petitioner's computations, the total annuity obligation each year would equal $ 350,000 ($ 300,000 plus $ 50,000 or 5 percent of $ 1,000,000). *508 Because decedent was 91 years old on the valuation date, petitioner multiplied $ 350,000 by 2.6955 (the actuarial figure in Table A corresponding to a lifetime annuity for a 91-year-old person) to arrive at a present value figure of $ 943,425 for decedent's interest. [3]
Petitioner emphasizes that the parties have stipulated that the value of the residuary trust was at least $ 1,005,126 on the date of Mrs. Shapiro's death. Because the stipulated value of the residuary trust exceeds the present value of decedent's lifetime annuity as computed under Table A, petitioner maintains that the trust was adequately funded to *509 meet the annuity obligation. Respondent, however, argues that petitioner's valuation of decedent's interest under Table A of section 20.2031-7(f), Estate Tax Regs., is erroneous for three reasons: (1) decedent's interest is legally unenforceable as a lifetime "annuity" under state law; (2) decedent's interest in the trust must be valued as a "term certain concurrent with one" life rather than as a lifetime "annuity" since its duration was limited by a depleting corpus and was not solely "dependent on the continuation or termination of the life of one person" as required under section 20.2031-7(a)(2), Estate Tax Regs.; and (3) Table A is not applicable in any event because the residuary trust was "underfunded" in that the corpus was not large enough to support the annuity obligation in case decedent had lived to be age 109.
Accordingly, respondent valued decedent's interest as a "term certain concurrent with one" life employing the actuarial method described in paragraph (e) of section 20.2031-7, Estate Tax Regs. Respondent concluded that the present value of decedent's interest on the date of Mrs. Shapiro's death was only $ 680,896, the amount respondent used to compute *510 the TPT credit under section 2013. Initially, we observe that the actuarial tables, such as Table A of section 20.2031-7(f), Estate Tax Regs., are an administrative convenience in that they provide a "bright line" approach to valuation making it unnecessary to hypothesize as to the facts and circumstances surrounding each case. The courts have long recognized the necessity of using the actuarial tables when forecasting a person's life. Simpson v. United States, 252 U.S. 547, 550 (1920); Bankers Trust Co. v. Higgins, 136 F.2d 477, 479 (2d Cir. 1943). It is well established that the actuarial tables generally are to be respected unless the established facts show that the result under the tables is unrealistic or unreasonable, or that the result ignores common sense. Continental Ill. Natl. Bank & Trust Co. v. United States, 504 F.2d 586, 594 (7th Cir. 1974); Estate of Lion v. Commissioner, 438 F.2d 56, 61 (4th Cir. 1971), affg. 52 T.C. 601 (1969); Estate of Weller v. Commissioner, 38 T.C. 790, 803 (1962). *511 Exceptions to the application of the actuarial tables are only allowed where the established facts are sufficient to justify such a departure. "Such exceptions have been recognized, for instance, where the death of a life tenant is imminent or predictable." Estate of McLendon v. Commissioner, T.C. Memo. 1993-459 (citing Miami Beach First Natl. Bank v. United States, 443 F.2d 116, 120 (5th Cir. 1971)). The party seeking to eschew the actuarial tables bears the burden of proving that the circumstances justify a departure from the norm. Bank of California v. United States, 672 F.2d 758, 759-760 (9th Cir. 1982); Continental Ill. Natl. Bank & Trust Co. v. United States, supra.
Respondent does not contend that Table A is inapplicable because Mr. Shapiro's death was imminent on the date of Mrs. Shapiro's death. Rather, respondent argues that Table A cannot realistically be used to value decedent's interest because he did not receive a lifetime "annuity" or any of the other types of property interests to which Table A applies. Respondent concedes the administrative *512 necessity of using the actuarial tables to value property interests that are dependent on a person's life; however, she contends that the value of decedent's interest is also circumscribed by the limited amount of money in the residuary trust. Based on our review of the record and the relevant authorities, we find that petitioner has properly characterized and valued decedent's interest in his wife's residuary trust for purposes of calculating the TPT credit under section 2013. We further find that respondent has distorted the nature of decedent's property interest and has twisted the clear language of her own regulation, section 20.2031-7, Estate Tax Regs., in an attempt to support the alleged tax deficiency in petitioner's case. Nature of Decedent's Interest Under State Law
It is well established that, in general, "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed." Morgan v. Commissioner, 309 U.S. 78, 80 (1940); see Blair v. Commissioner, 300 U.S. 5 (1937). In this case, the nature of decedent's interest in the testamentary *513 trust is to be determined under the law of the State of New York, Mrs. Shapiro's domicile at the time of her death. Rand v. United States, 445 F.2d 1166 (2d Cir. 1971). Under New York State law, the construction of wills is to be based first and foremost on the intent of the testator as determined from the four corners of the will. In re Fabbri's Will, 2 N.Y.2d 236, 140 N.E.2d 269 (1957). Words used in a will are to be interpreted in their ordinary and grammatical sense or meaning. In re Krooss, 302 N.Y. 424, 99 N.E.2d 222 (1951). When the words used in a will or codicil by a testator are clear, there is no power to change them. In re Watson's Will, 262 N.Y. 284, 186 N.E. 787 (1933). We have no doubt that Mrs. Shapiro intended to bequeath decedent a lifetime annuity. The codicil modifying her will unequivocally establishes a trust from which decedent was to receive an "annuity" of $ 300,000 per year during his life and from which decedent could make corpus withdrawals not to exceed 5 percent of the corpus' *514 market value at the end of each year. Respondent, however, argues that Mrs. Shapiro actually gave decedent a beneficial interest in an "annuity trust" which, according to respondent's reading of New York case law, is a property interest distinctly different from a "true annuity" for valuation purposes. We disagree. An "annuity" is commonly defined as a fixed, periodic payment, either for life or a term of years. Black's Law Dictionary 90 (6th ed. 1990). An "annuity trust", under New York law, is a type of trust calling for payment of a fixed amount of income regardless of the amount of corpus. In re McQueen's Will, 65 N.Y.S. 201, 205 (Sur. Ct. 1946); Black's Law Dictionary 90 (6th ed. 1990). Thus, an annuity, as commonly defined, may be payable from an annuity trust under New York law. We disagree with respondent's contention that In re McQueen's Will, supra, stands for the proposition that an annuity trust is distinctly different from an annuity. In that case, the court merely distinguished an annuity trust from a common trust. In re McQueen's Will, supra at 204. New York courts have recognized a few distinctions between an *515 annuity and an interest payable from an annuity trust, but we do not find that any of the noted distinctions are relevant to the question of whether petitioner may value decedent's interest as an "annuity" under Table A of section 20.2031-7(f), Estate Tax Regs. For example, respondent's reliance on In re Oakley's Will, 142 Misc. 1, 254N.Y.S.-306 (1931), and In re Maybaum's Will, 296 N.Y. 201, 71 N.E.2d 865 (1947), is misplaced. Those cases simply stand for the general proposition that a commercial annuity may not be purchased where "the testator directs an annuity to be paid out of the estate with a valid gift over of any remainder" because the money used to purchase the commercial annuity would then be lost to the estate, thus destroying the remainder interest. In re Maybaum's Will, 296 N.Y. at 201, 71 N.E.2d at 867. If Mrs. Shapiro had directed her trustee to purchase a commercial annuity for the benefit of decedent, the value of his interest would be computed under section 20.2031-8, Estate Tax Regs., not Table A of section 20.2031-7(f), Estate *516 Tax Regs. [4] The annuity obligation in the instant case was to be privately funded by the testamentary trust established by Mrs. Shapiro's estate. Thus, the cases cited by respondent dealing with commercial annuities are simply irrelevant to the valuation of the privately funded annuity interest in petitioner's case. Regardless of whether the residuary trust established by Mrs. Shapiro's estate fits the definition of "annuity trust" under New York law, it is clear that Mrs. Shapiro intended to give her husband a stream of fixed annual payments that was not to terminate or be reduced before his death; in other words, a lifetime annuity. Indeed, her will and codicil convince us that the annuity to her husband was chief among her testamentary objectives; she *517 gave her executors and trustee discretion to fund the trust so as to meet the annuity obligation and directed that none of the Federal estate taxes be paid out of her husband's share. None of the New York cases cited by respondent prevents petitioner from characterizing decedent's interest in the trust as a lifetime "annuity" for purposes of determining its present value under Table A of section 20.2031-7(f), Estate Tax Regs. We therefore reject respondent's first argument and hold that, under New York law, decedent received a lifetime annuity interest in the residuary trust. Whether Decedent's Interest Must be Valued as a "Term Certain Concurrent with One Life" due to Risk of Corpus Depletion
Section 20.2031-7(a)(2), Estate Tax Regs., provides as follows: The present value of an annuity, life estate, remainder, or reversion determined under this section which is dependent on the continuation or termination of the life of one person is computed by the use of Table A in paragraph (f) of this section. The present value of an annuity, term for years, remainder, or reversion dependent on a term certain is computed by the use of Table B in paragraph (f) of this section. *518 If the interest to be valued is dependent upon more than one life or there is a term certain concurrent with one or more lives, see paragraph (e) of this section. For purposes of the computations described in this section, the age of a person is to be taken as the age of that person at his or her nearest birthday. [Emphasis added.]
Respondent argues that decedent's interest is not a lifetime annuity that may be valued under Table A because it is not solely "dependent on the continuation or termination of the life of one person" as required under section 20.2031-7(a)(2), Estate Tax Regs. According to respondent, the duration of decedent's interest in the trust is contingent not only on his life span, but on the continued availability of funds in the trust corpus from which the annual payments to decedent were to be made. Respondent maintains that, on the date of Mrs. Shapiro's death, it was a "mathematical certainty" that the "huge annual payments as well as the additional corpus withdrawals" would exhaust the trust corpus within 4 years, assuming decedent did not die first. Respondent contends that this high probability of corpus depletion limits the duration of *519 decedent's interest to a "term certain" of less than 4 years for purposes of categorizing decedent's interest under section 20.2031-7(a)(2), Estate Tax Regs., as one that is dependent on a "term certain concurrent with one" life. Accordingly, respondent employed the valuation method described in paragraph (e) section 20.2031-7, Estate Tax Regs., [5] *520 and used actuarial factors contained in Internal Revenue Service Publication 723E, "Actuarial Values II: Factors at 10 Percent Involving One and Two Lives" (IRS Publication 723E), to compute the present value of decedent's interest. In particular, respondent patterned her computations on examples 8 and 11 in Part 4 of IRS Publication 723E [6] and determined that the present value of the property interest passing to decedent is $ 680,896, the amount respondent used in computing the TPT credit under section 2013. *521 Respondent's valuation method is untenable for several reasons. First, the regulation cited by respondent does not support her anomalous position that decedent's interest in the residuary trust should be characterized as a "term certain concurrent with one" life and valued as such under section 20.2031-7(e), Estate Tax Regs. Section 20.2031-7, Estate Tax Regs., in no way indicates that the meaning of "term certain", as a durational limit on a property interest, encompasses the mere possibility a trust fund will deplete at some future time. Rather, the regulation invariably uses "term certain" in a context consistent with its ordinary meaning as an immediately ascertainable and specifically prescribed period of time, such as a fixed number of years. Section 20.2031-7(a)(2), Estate Tax Regs., for example, states that "The present value of an annuity, term for years, remainder, or reversion dependent [solely] on a term certain is computed by the use of Table B in paragraph (f) of this section." (Emphasis added.) Table B shows the present worth, at a 10 percent discount rate, "of an annuity for a term certain, of an income interest for a term certain and of a remainder interest *522 postponed for a term certain". It is implicit in Table B that a "term certain" means an immediately ascertainable and specific period of time since the values for all the property interests in Table B are computed by reference to their duration in terms of "number of years" in column 1. See also sec. 20.2031-7(b), Estate Tax Regs., Example (2). Respondent confuses a term certain with a property interest that is terminable. In most cases, it is impossible to immediately ascertain the time at which a trust fund will exhaust with the certainty and specificity sufficient to equate the duration of the trust to a term certain. Although decedent's interest in the trust may have been terminable by virtue of the possibility of corpus depletion, the bequest of his interest was not definitively limited to a term certain. If respondent, in drafting this regulation, intended the meaning of term certain to comprise that period of time after which a property interest might be extinguished by the possible exhaustion of a trust fund, she should have set forth a special definition of "term certain" in the regulation. Because she did not, we are reluctant to transform *523 "term certain" into a term of art in this case. Respondent has elsewhere gone to great lengths to define what property interests are "terminable" for purposes of the marital deduction provided by section 2056. See especially sec. 20.2056(b)-1, Estate Tax Regs. The fact that respondent, in section 20.2031-7, Estate Tax Regs., did not specify "terminable" interests, when she could have, further convinces us that a term certain is to be distinguished from an interest that is merely terminable due to possible depletion of the corpus. The second reason we find respondent's valuation method under section 20.2031-7(e), Estate Tax Regs., inappropriate is that she has patterned her present value computations on examples in IRS Publication 723E that are not sufficiently analogous to the property interest bequeathed to decedent. Neither example 8 nor example 11 supports respondent's contention that the mere risk of corpus depletion prior to decedent's death restricts the duration of decedent's property interest to a "term certain concurrent with one" life. We note that Part 4 of IRS Publication 723E, containing examples 8 through 13, is entitled "Factors Involving One Life and a *524 Term of Years" (emphasis added), thereby implying that references to "term certain concurrent with one or more lives" in paragraphs (a)(2) and (e) of section 20.2031-7, Estate Tax Regs., refer solely to property interests that are limited in duration to one or more lives and a prescribed period of time such as a term of years. Finally, respondent has not directed us to any cases in which an interest in a trust or other fund was deemed to be limited to a term certain concurrent with one or more lives, and hence valued under section 20.2031-7(e), Estate Tax Regs., by virtue of a risk that the fund supporting the interest would exhaust prior to the death of the lifetime beneficiary. In our review of the cases in which the property interest being valued was equated with a "term certain concurrent with one or more lives", the term certain limitation corresponded to a definite span of time specifically granted or prescribed in a written instrument such as a will, a divorce decree, or a deed. See Estate of Lester v. Commissioner, 57 T.C. 503 (1972) (because divorce decree obligated decedent to make payments to his former wife until her death or the expiration *525 of 130 months, whichever event should first occur, the value of wife's claim against estate was determined actuarially under section 20.2031-7(e), Estate Tax Regs.); see also Estate of Van Horne v. Commissioner, 78 T.C. 728 (1982), affd. 720 F.2d 1114 (9th Cir. 1983). Contrary to respondent's assertions, we find that the mere risk of corpus depletion does not restrict the duration of decedent's interest in the residuary trust to a "term certain" within the meaning of section 20.2031-7(a)(2) and (e), Estate Tax Regs. Therefore, we hold that decedent's interest was not dependent upon a "term certain concurrent with one" life, and that respondent's valuation method under section 20.2031-7(e), Estate Tax Regs., is inappropriate to compute the present value of decedent's property interest. We further hold that decedent's bequest is properly characterized as a lifetime annuity under section 20.2031-7(a)(2), Estate Tax Regs., in that the bequest is "dependent on the continuation or termination of the life of one person" and that petitioner therefore properly relied on Table A to compute the present value of decedent's interest *526 in the residuary trust. Whether the Trust was "Underfunded" Causing Petitioner's Present Value Computations Under Table A to be Erroneous
Respondent's final argument is that petitioner's valuation of decedent's interest under Table A is erroneous because the residuary trust was "underfunded". Respondent concedes that, on the date of Mrs. Shapiro's death, the value of the residuary trust was $ 1,005,126, a figure which exceeds $ 943,425 -- the present value of decedent's annuity interest on the date of Mrs. Shapiro's death, as computed under Table A. [7] *528 Nonetheless, respondent contends that petitioner's computations under Table A are invalid because the corpus of the residuary trust was not large enough to support the annuity obligation in the event decedent had lived to reach what respondent calls his "extreme life expectancy" of 109 years of age. [8] Respondent's contention is stated as follows: In the instant case, decedent was 91 years old when Gertrude died. Thus, his extreme life expectancy under Table LN was 18 more years. The corpus of the residuary trust of Gertrude's estate was only $ 1,005,126. It was, therefore, insufficient to fully satisfy the annuity payments *527 and corpus withdrawals for more than three years and would exhaust in the fourth year. The factor for a 91 year-old found in Table A is a present value * * * [assuming] 18 [more] years of payments. Therefore, in multiplying the $ 300,000 annuity by the factor in Table A, petitioner has overstated the value of Benjamin's [decedent's] interest by the equivalent of the present value of fourteen years of $ 300,000 annuity payments (extreme life expectancy of 18 years minus the four-year duration of the trust) discounted by the probability that he would live that long.
Taking respondent's argument to its theoretical conclusion, any trust created with corpus funds equivalent to the present value of a lifetime annuity obligation as computed under Table A would be deemed to be "underfunded" in that it would have insufficient funds to sustain the annual payments should the annuitant live beyond his or her average life expectancy. In this regard, respondent's argument contravenes the fundamental purposes and presumptions underlying the actuarial tables. Table A is premised on two actuarial presumptions: (1) the interest rate on the principal amount is assumed to be 10 percent, and (2) a person, at any given age, is assumed to die within a time consistent with the average mortality rate for that age. Sec. 20.2031-7(f), Estate Tax Regs. [9] Table A does not expect or presume that a 91-year-old person will live for 18 more years; to the contrary, the table implicitly recognizes the possibility of any person reaching 109 years of age is extremely remote. One of the fundamental purposes *529 of the actuarial tables is to assist in the computation of the fair market value of property interests that are not ordinarily sold to the public. [10] For property items normally sold on the public markets, the fair market value is generally "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Sec. 20.2031-1(b), Estate Tax Regs. However, with respect to property interests that are not ordinarily sold to the public -- for example, private annuities, life estates, remainders, and reversions -- their fair market value "is their present value determined under" (emphasis added) section 20.2031-7, Estate Tax Regs. Sec. 20.2031-7(a)(1), Income Tax Regs. The fair market value of an obligation to make future payments is deemed to be a sufficient amount to meet the entire obligation. Thus, by deduction, one of the fundamental presumptions underlying Table A is that the present value of a lifetime annuity obligation is sufficient to sustain the stream of annuity payments as they come due over the course of an annuitant's expected *530 life span. This presumption is implicit in example 1 provided in section 20.2031-7(b)(1), Estate Tax Regs., that illustrates the operation of Table A. This assumption is also routinely made when determining the value of remainders and reversions under Table A. Sec. 20.2013-4, Example 2, Estate Tax Regs.; see also Estate of Edmonds v. Commissioner, 72 T.C. 970, 992 (1979); Estate of Koshland v. Commissioner, 177 F.2d 851 (9th Cir. 1949), affg. 11 T.C. 904 (1948); Korn v. Commissioner, 35 B.T.A. 1071 (1937). Therefore, whether the corpus of the residuary trust was capable of sustaining the annuity in the improbable event decedent lived to be 109 years of age is not relevant to the fair market valuation of his lifetime annuity under Table A. In essence, respondent argues that unless an annuity is "guaranteed" throughout an annuitant's extreme life expectancy, just as a commercial *531 annuity is guaranteed, the computation of the annuity's present value must be made on a case-by-case basis using a special actuarial factor supplied by the Internal Revenue Service; any computation of an unguaranteed, private annuity under Table A would be deemed invalid in respondent's view. Respondent's position, if it were correct, would vitiate the use of Table A as an administrative convenience and bright-line approach to valuation. Table A could not be used to determine the present values of all sorts of unguaranteed, privately funded annuities; they would all be subject to individual analysis under a facts-and-circumstances test. As noted, one of the principal purposes of the actuarial tables is to prevent every case from becoming a question of fact as to the most likely outcome of the case. Simpson v. United States, 252 U.S. 547 (1920). Although we have ignored the actuarial tables when their use will violate reason, Estate of McLendon v. Commissioner, T.C. Memo. 1993-459, and cases cited therein, absent an unreasonable result we will use the tables as the best method of valuation. Estate of Lion v. Commissioner, 438 F.2d 56 (4th Cir. 1971), *532 affg. 52 T.C. 601 (1969). In petitioner's case, we have found that the valuation of decedent's interest in his wife's residuary trust under Table A is not unreasonable. Moreover, respondent has failed to present any persuasive reason for ignoring the valuation result achieved under Table A. Accordingly, we reject respondent's argument that petitioner's Table A valuation is invalid because the residuary trust was incapable of sustaining the annuity payments in the event decedent lived to be 109 years old. We have evaluated respondent's other arguments and find them similarly unpersuasive. We have found that petitioner properly characterized decedent's interest in his wife's residuary trust as a lifetime annuity under both New York law and section 20.2031-7, Estate Tax Regs. We have also found that the value of the residuary trust on the date of Mrs. Shapiro's death exceeded the present value of decedent's annuity as computed under Table A, and that the trust was therefore sufficient to sustain the annuity obligation for decedent's life. Accordingly, we hold, as a matter of law, that petitioner properly computed the fair market value of decedent's interest *533 in the residuary trust under Table A of section 20.2031-7(f), Estate Tax Regs., and that petitioner is therefore entitled to the full amount of the TPT credit that it claimed under section 2013 on its estate tax return with respect to the transfer to decedent. Partial summary judgment in favor of petitioner will be granted. Based on the foregoing, An appropriate order will be issued. Footnotes
1. Unless otherwise indicated, Rule references are to the Tax Court Rules of Practice and Procedure, and section references are to the Internal Revenue Code in effect on the date of decedent's death.↩
2. The actuarial tables under sec. 20.2031-7, Estate Tax Regs., generally apply to estates of persons dying after Nov. 30, 1983, but before May 1, 1989, except as otherwise provided in paragraph (a)(1) of the section. Such tables assume a 10-percent interest rate and discount rate, and make no distinction between male and female life expectancies. Sec. 20.2031-10↩, Estate Tax Regs., generally applies to estates of persons dying after Dec. 1, 1970, but before Dec. 1, 1983, and therefore is not relevant to this case.
3. Petitioner's present value computations under Table A of sec. 20.2031-7(f), Estate Tax Regs., can be expressed in the following formula: $ 300,000 annual annuity x 2.6955 *
=
$ 808,650
Plus: 5% x $ 1,000,000 x 2.6955 *
=
134,775
Total present value of interest
=
943,425
* 2.6955 is the actuarial figure provided by Table A corresponding to a lifetime annuity for a 91-year-old person.↩
4. Sec. 20.2031-7(a)(1)↩, Estate Tax Regs., provides, in pertinent part, that "The value of annuities issued by companies regularly engaged in their sale, and of insurance policies on the lives of persons other than the decedent is determined under § 20.2031-8."
5. Sec. 20.2031-7(e), Estate Tax Regs., provides as follows: (e) Actuarial computations by the Internal Revenue Service. If the valuation of the interest involved is dependent upon the continuation or the termination of more than one life or upon a term certain concurrent with one or more lives a special factor must be used↩. The factor is to be computed on the basis of interest at the rate of 10 percent a year, compounded annually, and life contingencies determined, as to each person involved, from the values of lx that are set forth in column 2 of Table LN of paragraph (f). Table LN contains values of lx taken from the life table for the total population appearing as Table 1 of United States Life Tables: 1969-71, published by the Department of Health, Education, and Welfare, Public Health Service. A copy of the publication, containing many such special factors, may be purchased from the Superintendent of Documents, United States Government Printing Office, Washington, D.C. 20404. However, if a special factor is required in the case of an actual decedent, the Commissioner will furnish the factor to the executor upon request. The request must be accompanied by a statement of the date of birth of each person, the duration of whose life may affect the value of the interest, and by copies of the relevant instruments. Special factors are not furnished for prospective transfers. [Emphasis added.]
6. Examples 8 and 11, set forth in Part 4 of IRS Publication 723E, are as follows: 4. Factors Involving One Life and a Term of Years The columns of Table H are called "commutation columns." The use of these columns is illustrated in Examples 8 through 11. * * * Example 8 The factor for the present worth of a temporary annuity of $ 1.00 per annum payable annually for 10 years or until the prior death of a person aged 42 is $ 6.0231, determined as follows: Initial age 42 Term of years 10 Terminal age 52 (1)
N-factor, Table H, aged 42
15,313.9520 (2)
N-factor, Table H, aged 52
5,117.0965 (3)
Difference: Item (1) less
Item (2)
10,196.8555 (4)
D-factor, Table H, aged 42
1,692.9463 (5)
Required factor: Item (3)/Item (4)
6.0231
* * * Example 11 The factor for the present worth of the right of a person aged 21 to receive $ 1.00 upon attaining age 30 is $ 0.41851, determined as follows: Initial age 21 Terminal age 30 ↩
(1)
D-factor, Table H, aged 30
5,461.9063 (2)
D-factor, Table H, aged 21
13,050.9105 (3)
Required factor: Item (1)/Item (2)
$  0.41851
7. Petitioner contends that the present value of the residuary trust was $ 2,027,207 as of the date of Mrs. Shapiro's death. It arrives at this figure by adding the present value of the residue of the estate, $ 1,005,126, plus an advancement of $ 1,022,081 from Saul Shapiro for estate taxes, pursuant to a purported contractual agreement between Saul and Mrs. Shapiro. We do not need to decide if Saul's advancement of funds is part of the residuary trust on the valuation date due to our holding in this case.↩
8. Table A of sec. 20.2031-7(f)↩, Estate Tax Regs., sets forth actuarial factors for purposes of determining the present value of lifetime annuities, life estates, and remainders with respect to people of the ages 1 through 109 years. Table A thus presumes that no person will live to be age 110.
9. Wallace, "Taxation of Private Annuities", 40 B.U. L. Rev. 349, 371↩ (1960).
10. Id.↩